## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNIVA, INC.,[1] | ) | Case No. 17-10837 (KG) |
| Debtor. | ) | |
| | ) | **Re: Docket Nos. 6, 24, 82, 110, 171, 354, 445, 527, and 628** |

## FINAL ORDER AUTHORIZING SECURED POST-PETITION
## FINANCING PURSUANT TO 11 U.S.C. § 364

Upon the motion, dated April 17, 2017 [D.I. 6] (the "Motion"), as supplemented on the record before the Court, of Suniva, Inc. (the "Debtor") in the above-referenced Chapter 11 case (the "Case"), pursuant to sections 105, 362, 363(c), 364(c), 364(d)(1), 364(e) and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, *inter alia*, entry of a final order (the "New DIP Order"):

(i)     authorizing the Debtor to obtain secured, superpriority postpetition financing (as may be amended, supplemented, restated, or otherwise modified from time to time, only consistent with the terms of this New DIP Order, the "New DIP Facility") consisting of a delayed-draw term loan facility in an aggregate amount not to exceed $1,999,634.00:

(ii)     authorizing the Debtor to execute and deliver the Debtor-in-Possession Credit Agreement (attached hereto as **Exhibit A**) (as may be amended, supplemented, restated, or otherwise modified from time to time, consistent with the terms of this final order, the "New DIP Credit Agreement") by and among the Debtor, Lion Point Capital, LP or one of its designated affiliates (the "DIP Agent"), and the lenders party thereto (the "New DIP Lenders"), and other

---

[1]     The last four digits of the Debtor's federal tax identification number is 2418.  The Debtor's corporate headquarters is located at 5765 Peachtree Industrial Blvd., Norcross, Georgia 30092.

related loan documents (collectively with all documents comprising the New DIP Facility, the "New DIP Financing Documents") and to perform such other acts as may be necessary or desirable in connection with the New DIP Financing Documents and pursuant to the provisions of this New DIP Order;

(iii)    authorizing the Debtor to grant the DIP Agent and New DIP Lenders allowed superpriority administrative expense claims in the Case and any successor case (as defined herein) for the New DIP Facility and all obligations owing thereunder and under the New DIP Financing Documents (collectively, and including all "Obligations" as described in the New DIP Credit Agreement, the "New DIP Loan Outstandings"), as more fully set forth in this New DIP Order;

(iv)    authorizing the Debtor to grant the DIP Agent, for the benefit of itself and the New DIP Lenders, automatically perfected security interests in and liens on all of the New DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral");

(v)    authorizing and directing the Debtor to accrue the principal, interest, fees, expenses and other amounts payable under each of the New DIP Financing Documents as they become due (subject to the provisions of this New DIP Order), including, without limitation, the fees and disbursements of DIP Agent's attorneys, advisors, accountants, and other consultants, and the legal expenses of the New DIP Lenders, all to the extent provided by and in accordance with the terms of the New DIP Financing Documents;

(vi)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the New DIP Financing Documents and this New DIP Order; and

The Court having considered the Motion, the exhibits attached thereto, the New DIP Financing Documents, the evidence submitted or adduced and the arguments of counsel made at the hearing held on May 29, 2018 (the "DIP Hearing"); notice of the DIP Hearing having been given in accordance with the Court's ruling at a hearing held on May 3, 2018, Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); the DIP Hearing to consider the relief requested in the Motion having been held and concluded; any objections to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; it appearing to the Court that granting the relief requested (as such requested relief was modified on the record at the DIP Hearing) on a final basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE DIP HEARING BY THE DEBTOR, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*: On April 17, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), commencing this Case.

B.    *Debtor in Possession*. The Debtor is continuing in the management and operation of its businesses and properties as Debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

-3-

C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Statutory Committee*.  On April 27, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in this Case pursuant to section 1102 of the Bankruptcy Code (the "Statutory Committee").

E.      *Findings Regarding the Postpetition Financing*.

(i)      *Need for Postpetition Financing*.  The Debtor's need to obtain credit pursuant to the New DIP Facility is immediate and critical in order to maintain the Case, to enable the Debtor to continue operations (including disposing of remaining inventory and collecting receivables), to minimize the disruption of the Debtor as a "going concern" and to administer and to preserve the value of its estate.  The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise finance its operations requires the availability of working capital from the New DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, and the possibility for a successful reorganization.  The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the New DIP Facility.

(ii)      *No Credit Available on More Favorable Terms*.  Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the New DIP Lenders on terms more favorable than the New DIP Facility

that comply with section 364 of the Bankruptcy Code.  The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code.  The Debtor has also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code or (b) secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien.  Within the time frame required by its need to avoid immediate and irreparable harm, financing on a postpetition basis is not otherwise available without granting the New DIP Lenders (1) perfected security interests in and liens on (each as provided herein) substantially all of the Debtor's existing and after-acquired assets (except as otherwise noted herein), (2) superpriority claims, and (3) the other protections set forth in this New DIP Order.

(iii)    *Use of Proceeds of the New DIP Facility*.  The DIP Agent and New DIP Lenders are providing the New DIP Facility to fund the administration of this Case and, in each case in a manner consistent with the terms and conditions of the New DIP Financing Documents, this New DIP Order and the Budget (defined below and as the same may be modified from time to time), solely to accommodate and support attempts to reach a settlement of the AD/CVD Claim (as defined in the New DIP Credit Agreement) and to fund general working capital and operational expenses, including but not limited to payment of restructuring expenses of the Debtor and payment of certain leases and lease-related expenses in Norcross, Georgia and Saginaw, Michigan for the months of June and/or July 2018.

(iv)    *Sections 506(c) and 552(b)*.  Upon entry of this New DIP Order, in light of the New DIP Facility and the DIP Agent's and New DIP Lenders' agreement to subordinate their

-5-

rights of payment, liens and superpriority/priority claims to the Carve Out and all claims of the SQN DIP Lenders under the SQN DIP Facility Agreement and the SQN DIP Order (collectively, the "SQN DIP Facility Claims") and to also carve out from its lien and superpriority administrative claim rights claims under Chapter 5 of the Bankruptcy Code and their proceeds, as well as certain commercial tort claims and their proceeds, to the extent set forth below, each New DIP Lender is entitled to and shall receive with respect to the New DIP Collateral (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

F.    *Good Faith of the DIP Agent and the New DIP Lenders*.

(i)    *Willingness to Provide Financing*.  The New DIP Lenders have indicated a willingness to provide financing to the Debtor subject to: (a) the entry of this New DIP Order; (b) approval of the terms and conditions of the New DIP Facility and the New DIP Financing Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Agent and New DIP Lenders are extending credit to the Debtor pursuant to the New DIP Financing Documents in good faith, and that the DIP Agent's and New DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this New DIP Order and the New DIP Financing Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this New DIP Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the New DIP Facility and the New DIP Financing Documents, and the fees to be accrued and paid thereunder, are fair, reasonable, and the best available to the Debtor under the

circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The New DIP Facility was negotiated in good faith and at arm's length among the Debtor, DIP Agent, New DIP Lenders and their respective counsel. Credit to be extended under the New DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code. Accordingly, the DIP Agent and New DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this New DIP Order and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this New DIP Order or any other order.

G.    _Notice_.  Notice of the DIP Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the Office of the U.S. Trustee; (ii) the Internal Revenue Service; (iii) counsel to the Statutory Committee; (iv) counsel to Wanxiang America Corporation ("Wanxiang"); (v) counsel to the DIP Agent for itself and for the New DIP Lenders; (vi) counsel to SQN Asset Servicing, LLC (for itself, as agent under the SQN DIP Facility Agreement, and for the SQN DIP Lenders (as defined below), the "SQN Agent"); (vii) counsel to Wells Fargo Bank, N.A. ("Wells Fargo"); (viii) all parties who have filed a notice of appearance and requested service of pleadings in the Case; (ix) applicable state and local taxing authorities; and (x) Shunfeng International Clean Energy Ltd.  The parties have made reasonable efforts to afford the best notice possible under the circumstances and the notice provided complies with the Bankruptcy Rules and Local Rules.

H.    The Debtor has requested immediate entry of this New DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, effective immediately, that:

1.    <u>Financing Approved</u>.  The Motion is granted as set forth herein, the New DIP Facility is authorized and approved, subject to the terms and conditions set forth in this New DIP Order, and the Debtor is authorized to obtain borrowings under the New DIP Facility on a final basis in an aggregate principal amount up to $1,999,634.00.

2.    <u>Objections Overruled</u>.  All objections to the Motion or entry of this New DIP Order, to the extent not withdrawn or resolved, are hereby overruled.

**New DIP Facility Authorization**

3.    <u>Authorization of the New DIP Facility and New DIP Financing Documents</u>.  The Debtor is expressly and immediately authorized, empowered and directed to execute and deliver the New DIP Financing Documents and subject to the terms of this New DIP Order and the New DIP Financing Documents, to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the New DIP Facility and the creation and perfection of the New DIP Liens described in and provided for by this New DIP Order and the New DIP Financing Documents.  The Debtor is hereby authorized and directed to accrue the principal, interest, fees, expenses and other amounts described in the New DIP Financing Documents and pay such amounts when they become due without need to obtain further Court approval, all to the extent provided in the New DIP Financing Documents.  Upon payment, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance

recoveries, condemnations or otherwise, will be deposited and applied as required by this New DIP Order and the New DIP Financing Documents. Absent prior written consent of the SQN DIP Agent, the DIP Lenders shall not assign or participate any portion of the New DIP Loan to any party who has requested exclusion from tariffs and remedies under the Trade Case.

4.      Authorization to Borrow. Until the earlier of (a) the Maturity Date (as defined in the New DIP Credit Agreement) and (b) the termination of obligations under the New DIP Financing Documents by the DIP Agent upon the occurrence and during the continuation of an Event of Default (as defined herein) (such earlier date, the "Termination Date"), and subject to the terms, conditions, limitations on availability and reserves set forth in the New DIP Financing Documents, New DIP Facility, and this New DIP Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request extensions of credit under the New DIP Facility (in the form of term loans) of up to an aggregate principal amount not to exceed $1,999,634.00.

5.      New DIP Loan Outstandings. The New DIP Financing Documents and this New DIP Order shall constitute and evidence the validity and binding effect of the New DIP Loan Outstandings, which New DIP Loan Outstandings shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (any such case, a "Successor Case"). Upon entry of this New DIP Order, the New DIP Loan Outstandings will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Agent or New DIP Lenders under the New DIP Financing Documents or this New DIP Order, including, without

limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the New DIP Financing Documents. The New DIP Loan Outstandings shall be due and payable, without notice or demand, on the Termination Date, except as provided in paragraphs G and 20 herein.

6.    New DIP Liens and New DIP Collateral. As security for the Debtor's payment and performance under the New DIP Financing Documents, all interest, costs, expenses, fees and other charges at any time payable by the Debtor to the New DIP Lenders and/or DIP Agent in connection with the New DIP Financing Documents, all reimbursement obligations, and all other indebtedness and obligations under any of the New DIP Financing Documents including all "Obligations" (as defined in the New DIP Credit Agreement) (all of the foregoing being collectively called the "New DIP Obligations"), the DIP Agent shall have, for itself and for the benefit of the New DIP Lenders, and is granted (effective and perfected with the entry of this New DIP Order), and without the necessity of the execution, filing or recording by the Debtor or the DIP Agent of security agreements, pledge agreements, mortgages, financing statements or other agreements) valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens upon (such security interests and liens, collectively, the "New DIP Liens") all presently owned and hereafter acquired personal property, real property and all assets of the Debtor, whether owned or consigned by or to, or leased from or to, and all proceeds and products (each as defined in the UCC) thereof, including, without limitation, the following: (i) the Trade Case (as defined in the New DIP Credit Agreement) and the proceeds of the Trade Case, (ii) the AD/CVD Claim and the proceeds of the AD/CVD Claim and (iii) intercompany claims and equity pledges (collectively, the "New DIP Collateral") in the priorities set forth herein; provided, that SQN (in its capacity as lender under the SQN Prepetition Credit Agreement), Wanxiang, the SQN DIP

Lenders, and the SQN Agent's rights to assert an interest, including a senior interest, if any, in the AD/CVD Claim and the proceeds of the AD/CVD Claim, and the rights of the DIP Agent, the New DIP Lenders, the Debtor or the Statutory Committee to contest such assertion, are preserved. Notwithstanding the foregoing, the New DIP Collateral shall not include the Carved Out Claims and Proceeds (as defined in the New DIP Credit Agreement). Subject in all respects to the Carve Out provided in paragraph 26 hereof, the New DIP Liens shall be:

      (a)    Unencumbered Property: Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable and automatically and fully perfected, first priority liens on, and security interests in, all New DIP Collateral that is not otherwise subject to valid, perfected, enforceable and unavoidable liens (collectively, the "Unencumbered Property") including the proceeds (as defined in the Uniform Commercial Code (the "UCC")) thereof;

      (b)    Encumbered Property: Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable and automatically and fully perfected liens on and security interests in, all New DIP Collateral other than the Unencumbered Property (collectively, the "Encumbered Property") including the proceeds (as defined in the UCC) thereof; provided that such liens shall be junior and subordinate to the liens granted pursuant to each of the following in their relative priority: (i) the Debtor-in-Possession Credit Agreement dated as of May 19, 2017 by and among the Debtor, the lenders from time to time party thereto (the "SQN DIP Lenders" and SQN Asset Servicing, Inc. (as amended or supplemented, the "SQN DIP Facility Agreement"), (ii) the *Final Order Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364* [Docket No. 171] (as amended, the "SQN DIP Order"), (iii) that certain Credit Agreement dated as of November 17, 2015 (the "SQN Prepetition Credit Agreement"), (iv) that

certain Security Agreement dated as of November 17, 2015 (the "SQN Security Agreement"),

(v) that certain Standby Credit and Security Agreement between Suniva and Wanxiang dated

November 22, 2013 (the "Wanxiang Agreement", and together with the SQN Prepetition Credit

Agreement, the SQN Security Agreement and all other documents executed in connection

therewith, the "Prepetition Credit Documents"), and (vi) any valid, non-avoidable lien that is

perfected (x) prior to the Petition Date, or (y) subsequent to the Petition Date as permitted by

section 546(b) of the Bankruptcy Code, and is otherwise senior in priority and superior to any

security, mortgage, collateral interest, lien or claim on or to any of the New DIP Collateral.

   (c)  Other than as set forth herein, the New DIP Liens shall not be made subject

to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or

any Successor Case.  The New DIP Liens shall be valid and enforceable against any trustee or

other estate representative appointed in the Case or any Successor Case, upon the conversion of

the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or

upon the dismissal of the Case or Successor Case.  Upon entry of this New DIP Order, the New

DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No

lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the

Bankruptcy Code shall be made *pari passu* with or senior to the New DIP Liens.

   7.  DOE Funded Equipment.  Real property, personal property, intellectual property,

equipment, rights of setoff and the respective proceeds thereof (altogether, the "Funded Property")

acquired as a result of United States Department of Energy ("DOE") funding pursuant to

agreements between the Debtor and the DOE, including but not limited to Assistance Agreement

DE-EE0006354 and Assistance Agreement DE-EE0006815, as subsequently amended, are

expressly excluded from the New DIP Collateral, and the New DIP Liens shall not encumber the

Funded Property.  The rights of the United States relating to its interests in the Funded Property ("DOE Interests"), including the right to assert the position that such interests are not property of the estate, are fully preserved.  Nothing herein shall constitute a finding of fact or conclusion of law with respect to the DOE's Interests in the Funded Property in relation to the asserted liens of the New DIP Lenders or any other lienholders; such determination is expressly reserved to a later date.

8.      New DIP Superpriority Claims.  Immediately upon entry of this New DIP Order, the New DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Case and any Successor Case (collectively, the "New DIP Superpriority Claims") for all New DIP Loan Outstandings.  The New DIP Superpriority Claims are subordinate in payment and priority to the Carve Out and SQN DIP Facility Claims, and except as set forth herein shall (a) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtor or its estate in the Case and any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), (upon entry of this New DIP Order), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and the Bankruptcy Code, and any other provision of the Bankruptcy Code, and (b) at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law.  The New DIP Superpriority Claims shall not extend to or be payable from the Carved-Out Claims and Proceeds.

9.      Subordination, Subrogation, and Limited Standstill.  Each party to the New DIP Credit Agreement agrees, for itself and its respective successors and assigns, and the New DIP

Lenders agree, that any payment with respect to the New DIP Facility is hereby subordinated in right of payment to the prior indefeasible payment in full, in cash, other than contingent indemnification claims that have not yet been asserted ("Payment in Full") of the SQN DIP Facility Obligations (including, without limitation, all accrued interest thereon, all escrow and reserve payments due with respect to the SQN DIP Facility Obligations and all other sums advanced by the lenders thereunder from time to time pursuant to the SQN DIP Facility Documents or otherwise due under the SQN DIP Facility Documents or with respect to the SQN DIP Facility Obligations) and the termination of all commitments under the SQN DIP Facility Agreement. The New DIP Lenders hereby agree to subordinate, and do hereby subordinate, the New DIP Liens in respect of the New DIP Credit Agreement to the liens under the SQN DIP Facility Agreement. Until Payment in Full of the SQN DIP Facility Obligations, no party to the New DIP Credit Agreement shall make, nor shall the New DIP Lenders accept, any payment, distribution, redemption or purchase of any kind or character in respect of the New DIP Loan Outstandings. Until Payment in Full of the SQN DIP Facility Obligations, the New DIP Lenders and the DIP Agent will not enforce or exercise, or seek to enforce or exercise, any rights or remedies (including any right of setoff or notification of account debtors) with respect to any New DIP Collateral subject to the liens under the SQN DIP Facility Agreement or commence or join with any Person (other than the SQN Agent) in commencing, or filing a petition for, any action or proceeding with respect to such rights or remedies (including any such enforcement or exercise in any foreclosure action or proceeding or any action in the Cases); provided, that New DIP Lenders and the DIP Agent may enforce or exercise any or all such rights and remedies, or commence or petition for any such action or proceeding, after a period (the "Standstill Period") ending on the date that is sixty (60) days after the receipt by the SQN DIP Agent of a notice (the "Second Lien Default Notice") from the DIP

Agent declaring, in writing, (A) the occurrence and continuance of an Event of Default (as that term is defined in the New DIP Credit Agreement) and (B) that the Standstill Period shall commence contemporaneously with the delivery of such notice (or if later, such later date as identified in such notice) and that at the expiration date of the Standstill Period, the DIP Agent intends to pursue an Enforcement Action[2]; provided further that, notwithstanding anything contained in this New DIP Order to the contrary, (x) in no event shall the New DIP Lenders or the DIP Agent be prevented from making any filing that may be required to toll the running of any applicable statute of limitations or to preserve its rights to make a claim against the Debtor and (y) nothing hereunder shall obligate the New DIP Lenders or the DIP Agent to fund advances under the New DIP Financing Documents upon the occurrence or continuation of an Event of Default under such documents.

10.    No Obligation to Extend Credit.  Neither the DIP Agent nor the New DIP Lenders shall have any obligation to make any loan or advance under the New DIP Financing Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable New DIP Financing Documents and this New DIP Order have been satisfied in full or waived by the DIP Agent in its sole and reasonable discretion.  Otherwise, however, the DIP Agent and New DIP Lenders shall make, and are directed to make, advances in accordance with the Budget and

---

[2]      "Enforcement Action" shall be defined, with respect to the New DIP Financing Documents, as (i) the taking of any action to collect on the New DIP Loan Outstandings or any part thereof (including any foreclosure action with respect to the New DIP Collateral), (ii) the commencement of any litigation or proceeding against the Debtor, other than the Chapter 11 Cases, (iii) the suing on the New DIP Financing Documents or any guaranty or other obligation contained in the New DIP Financing Documents, (iv) the enforcement of any right of repayment, redemption, purchase or prepayment under any New DIP Loan Outstandings, (v) the exercising of any banker's lien or rights of set-off or recoupment, (vi) the commencement (or joining-in) of any insolvency proceedings against the Debtor under any international, federal or state law, (vii) the taking of any other enforcement action against the Debtor, the New DIP Collateral or any of the Debtor's other assets or (viii) the seeking, filing, proposing or supporting of any relief in the Bankruptcy Court, including relief from the automatic stay.

the New DIP Financing Documents no less frequently than on a weekly basis two business days after receipt of a written draw request from the Debtor.

11.     <u>Use of New DIP Facility Proceeds; Payment of Prepetition Obligations</u>.  From and after the closing date of the New DIP Credit Agreement, unless the New DIP Lenders consent, the Debtor shall use advances of credit under the New DIP Facility only for the purposes specifically set forth in this New DIP Order, the New DIP Financing Documents and in compliance with the Budget, a copy of which is attached to this New DIP Order as **Exhibit B**.  Notwithstanding any first-day orders entered authorizing the Debtor to pay any prepetition or other expenses, all such payments shall be made in accordance with the Budget.

12.     <u>Amendment of the New DIP Financing Documents</u>.  The New DIP Financing Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if:  (i) the amendment, modification or supplement is (a) in accordance with the New DIP Financing Documents, (b) beneficial to the Debtor and (c) not prejudicial in any material respect to the rights of third parties; (ii) a copy (which may be provided through electronic mail or facsimile) of the proposed amendment, modification or supplement is provided to counsel for the Statutory Committee, the U.S. Trustee and the SQN Agent at least five (5) business days prior to the proposed effective date of such amendment, modification or supplement; and (iii) the amendment, modification or supplement is filed with the Court.  The consent of the Statutory Committee, the U.S. Trustee, and the SQN Agent and approval of the Court is not necessary to effectuate any such amendment, modification or supplement; <u>provided</u>, <u>however</u>, that in the event the Statutory Committee, the U.S. Trustee or the SQN Agent files a written objection to such amendment, modification or supplement with this Court within such five (5) business day period, the proposed amendment, modification or supplement shall be subject to the approval of this Court,

and further provided that the Statutory Committee, U.S. Trustee or SQN Agent may waive in writing their right to object to any proposed amendment, modification or supplement otherwise satisfying (i)-(iii) above, thereby resulting in that proposed amendment, modification or supplement being deemed effective without the passing of such five (5) business day period. Except as otherwise provided in this paragraph 12, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the Debtor and with the necessary consents required under and executed in accordance with the New DIP Financing Documents, and approved by the Court on notice.

13.    **Budget**. Attached hereto as **Exhibit B** is a twenty (20) week budget for the period from May 21, 2018 through and including October 7, 2018 (the "Budget"), which has been consented to by the DIP Agent. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses that the Debtor expects to incur during each month of the Budget. The Debtor shall be authorized to use the proceeds of the New DIP Facility only for payment of such items as are set forth in the Budget and subject to the terms and conditions set forth in the New DIP Credit Agreement and this New DIP Order unless the New DIP Lenders otherwise consent. The Budget may be revised by the end of each month to reflect any developments in the Case, and shall remain subject to the consent of the Debtor and the DIP Agent each month. Not later than the second (2nd) business day of each week commencing with the second (2nd) week of the period covered by the Budget, the Debtor shall provide the DIP Agent with a variance report reflecting, on a line-item basis, the actual cash disbursements and revenues for the preceding week and the percentage variance (the "Variance Percent") of the aggregate actual disbursements and revenues from the aggregated disbursements reflected in the Budget for that period. Any disbursement by the Debtor other than for budgeted

amounts as set forth in the Budget shall constitute an Event of Default in accordance with the provisions of this Order unless the DIP Agent consents to those changes in writing; provided, however, that the Debtor may make payments in excess of the total budgeted disbursements, and it shall not constitute an Event of Default, so long as (i) the Variance Percent of the aggregate of all actual disbursements for each week shall not exceed ten percent (10%) of the budgeted disbursements for that week; and (ii) the Variance Percent of the aggregate of all actual disbursements for (a) the first two-week period of the Budget, (b) the first three-week period of the Budget, and (c) any consecutive four-week period shall not exceed ten percent (10%) of the aggregate of all budgeted disbursements for such four-week period (subsections (i) and (ii) above are collectively, the "Allowed Disbursement Variance"). For the avoidance of doubt, any amount included in the Budget that is not incurred or paid during a particular week shall be permitted to be carried over into subsequent or back to prior weeks of the Budget.

14.    Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this New DIP Order, including, without limitation, to:  (a) permit the Debtor to grant the New DIP Liens and New DIP Superpriority Claims; (b) permit the Debtor to incur all liabilities and obligations under the New DIP Financing Documents and this New DIP Order; (c) permit the Debtor to perform such other acts as are necessary to effectuate the terms of this New DIP Order; and (d) authorize the Debtor to accrue and pay the DIP Agent and New DIP Lenders, payments made in accordance with the terms of this New DIP Order.

15.    Perfection of New DIP Liens. This New DIP Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the New DIP Liens without the necessity of filing or recording any financing statement or other instrument or document which

may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the New DIP Liens, or to entitle the DIP Agent and New DIP Lenders to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable New DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the date hereof; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the New DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Agent, all such financing statements, mortgages, notices and other documents as any of the DIP Agent and New DIP Lenders, may reasonably request. The DIP Agent, in its discretion, may file a photocopy of this New DIP Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

16.    Proceeds of Subsequent Financing. If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b) or 364(c) of the Bankruptcy Code in violation of the New DIP Financing Documents at any time prior to the repayment in full of all New DIP Loan Outstandings and the termination of the DIP Agent's and New DIP Lenders' obligation to extend credit under the New DIP Facility, then the

net cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in the New DIP Financing Documents.

17.    Maintenance of New DIP Collateral.  Until the payment in full in cash of all New DIP Loan Outstandings, and the termination of the New DIP Lenders' obligations to extend credit under the New DIP Facility, the Debtor shall insure the New DIP Collateral as required under the New DIP Facility.

18.    Disposition of New DIP Collateral; Rights of DIP Agent and New DIP Lenders. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the New DIP Collateral without prior Bankruptcy Court approval.

19.    Events of Default.  The occurrence of an "Event of Default" under the New DIP Credit Agreement (subject to any extensions or waivers as permitted under the New DIP Financing Documents), or a default under the terms and conditions of this New DIP Order shall constitute an event of default under this New DIP Order, unless expressly waived in writing by the DIP Agent in accordance with the consents required in the New DIP Financing Documents (collectively, the "Events of Default").

20.    Rights and Remedies Upon Event of Default.  Subject to paragraph 10 above, upon three (3) business days' written notice to the Debtor and the Statutory Committee of the occurrence of an Event(s) of Default and the occurrence of the Termination Date, and following the expiration of any applicable grace period, (a) the DIP Agent, as directed by the New DIP Lenders as provided in the New DIP Financing Documents, may declare all New DIP Loan Outstandings owing under the New DIP Financing Documents to be immediately due and payable, (ii) any further commitment of the New DIP Lenders to extend credit (to the Debtor to the extent any such commitment remains) may be terminated, restricted, or reduced and (iii) the New DIP Credit

Agreement and any other New DIP Financing Document shall be terminated as to any future liability or obligation of the DIP Agent and the New DIP Lenders, but without affecting any of the New DIP Liens or the New DIP Loan Outstandings. Any automatic stay otherwise applicable to the DIP Agent or New DIP Lenders is hereby modified so that the DIP Agent and the New DIP Lenders shall be entitled to exercise all rights and remedies against the New DIP Collateral in accordance with the New DIP Financing Documents and this New DIP Order and shall be permitted to satisfy the New DIP Loan Outstandings and New DIP Superpriority Claims, subject to the Carve Out and the payment in full of all SQN DIP Facility Claims; provided, however, that the DIP Agent and the New DIP Lenders shall not be entitled to exercise any remedies with respect to the New DIP Collateral until five (5) business days after the Termination Date. Notwithstanding anything to the contrary, the Debtor and the Statutory Committee shall be entitled to seek an emergency hearing with the Court with respect to any or all of the foregoing. Unless the Court orders otherwise, the automatic stay shall automatically be terminated at the end without further notice or order, and the DIP Agent and the New DIP Lenders, shall be permitted to exercise all remedies set forth herein, in the New DIP Credit Agreement, the New DIP Financing Documents, as applicable, and as otherwise available at law against the New DIP Collateral, without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the New DIP Collateral or any other rights and remedies granted to the DIP Agent and New DIP Lenders with respect thereto pursuant to the New DIP Credit Agreement, New DIP Financing Documents, or this New DIP Order. Notwithstanding anything to the contrary in this New DIP Order, the right of the DIP Agent or the New DIP Lenders to occupy and/or use any leased premises shall be limited to any rights: (a) existing under applicable non-bankruptcy

law; (b) consented to, in writing, by the applicable landlord(s); and/or (c) granted by the Court on motion and notice, and with an opportunity for the landlords to respond.

21.    Right to Credit Bid.  Subject to section 363(k) of the Bankruptcy Code, upon entry of this New DIP Order, the DIP Agent (as well as each New DIP Lender, separately) shall have the right to "credit bid" the amount of the New DIP Loan Outstandings as of the date of such bid during any sale of all or substantially all of the Debtor's assets to the extent it includes the sale of any New DIP Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

22.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this New DIP Order.  Through the date hereof, the DIP Agent and New DIP Lenders each have acted in good faith in connection with negotiating the New DIP Financing Documents, extending credit under the New DIP Facility, and their reliance on this New DIP Order is in good faith.  Based on the findings set forth in this New DIP Order and the record made during the DIP Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this New DIP Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and New DIP Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code.

23.    Indemnification of DIP Agent and New DIP Lenders.  The Debtor shall indemnify and hold harmless the DIP Agent and each New DIP Lender, solely in their capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and

character arising out of or related to the New DIP Financing Documents, or the New DIP Facility or the transactions contemplated thereby and by this New DIP Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the New DIP Financing Documents and as further described therein and herein, provided that the Debtor shall not have any obligation to indemnify and hold harmless any indemnified party under this paragraph with respect to any matter resulting from (a) such indemnified party's fraud, gross negligence, or willful misconduct or (b) violations by such indemnified party of this New DIP Order, or from breaches by such indemnified party of the New DIP Financing Documents, in each case as determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's and each New DIP Lender's exercise of discretionary rights granted under the New DIP Facility. In all such litigation, or the preparation therefor, the DIP Agent and each New DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel. All fees and expenses of professionals of the DIP Agent and New DIP Lenders to be paid by the Debtor under this New DIP Order or the New DIP Credit Agreement shall be on prior ten (10) day notice to the U.S. Trustee and the Statutory Committee and subject to objections as to the reasonableness of such fees or expenses.

24.     Reporting Requirements. Subject to any extensions or waivers as permitted under the New DIP Financing Documents and this New DIP Order, the Debtor shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the New DIP Financing Documents.

25.     Rights of Access and Information. Without limiting the rights of access and information afforded to the DIP Agent and New DIP Lenders under the New DIP Financing

Documents, the Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the DIP Agent and New DIP Lenders reasonable access to the Debtor's premises and its books and records in accordance with the New DIP Financing Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.   In addition, the Debtor authorizes its independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and New DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition the Debtor. Further, the Debtor's special counsel, which is pursuing the AD/CVD Claim, shall provide the DIP Agent and New DIP Lenders with a written status report of the litigation relating thereto every two weeks, subject to applicable privileges and subject to the confidentiality provisions in the DIP Agreement, with a contemporaneous copy to the Debtor's and the Statutory Committee's bankruptcy counsel.

26.    Carve Out.

(a)    *Carve Out*.  As used in this New DIP Order, the "Carve Out" shall encompass the following fees and expenses:  (a) following the occurrence of a Triggering Event, (i) allowed fees, and reimbursement for disbursements of professionals retained by the Debtor (the "Debtor's Professional Fee Payments") and the allowed fees and reimbursements for disbursements of professionals retained by the Statutory Committee (the "Committee's Professional Fee Payments," and together with the Debtor's Professional Fee Payments, the "Estate's Professional Fee Payments") accrued in an aggregate amount for all the Estate's Professional Fee Payments not to exceed $50,000.00 (the "Carve Out Amount"), provided, that, the Carve Out Amount shall be paid first out of excess funds (determined after application of

amounts in accordance with subparagraph (b) below), if any, in the Professional Fees Escrow; (ii) quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court; and (iii) fees payable to a chapter 7 trustee in an aggregate amount not to exceed $10,000 and (b) without reducing the Carve Out Amount, all Debtor's Professional Fee Payments and Committee's Professional Fee Payments incurred at any time before or on the date of the Triggering Event (the "Pipeline Period"), whether such amounts are allowed by the Court prior to or after delivery of notice of a Triggering Event (and including amounts incurred but not invoiced prior to the delivery of notice of a Triggering Event);. As used in this paragraph 26(a), the term "Triggering Event" shall mean the date the DIP Agent provides to the Debtor and the Statutory Committee, with a copy to the Debtor's and the Statutory Committee's counsel, a notice of (i) an Event of Default and (ii) termination of the Pipeline Period for purposes of the Carve Out. As used in this paragraph 26(a), the term "Triggering Event" shall also mean the Debtor's failure to pay all quarterly fees owed pursuant to 28 U.S.C. § 1930(a)(6) and interest due thereon pursuant to 31 U.S.C. § 3717 (collectively, the "Chapter 11 Quarterly Fees") until such time as a final decree is entered by the Court or the Court enters an ordering converting or dismissing the Debtor's Case. The New DIP Liens, and the New DIP Superpriority Claims shall be junior in payment and priority to the Carve Out, to all SQN DIP Facility Claims, and to the "Carve Out" as defined in the SQN DIP Order, as subsequently amended, including by the *Order Authorizing Debtor to Enter into a Fourth Amendment to the DIP Credit Agreement* [D.I. 636].

(b)    *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The DIP Agent and New DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtor and/or the Statutory Committee incurred in connection with this Case or any Successor

-25-

Case. Until the occurrence of a Triggering Event, the allowed Debtor's Professional Fee Payments and Committee's Professional Fee Payments shall be paid in accordance with the Budget. Nothing in this New DIP Order or otherwise shall be construed (i) to obligate the DIP Agent or New DIP Lenders, in any way to pay compensation to or to reimburse expenses of any professionals retained by the Debtor and/or the Statutory Committee, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out Amount if actual Debtor's Professional Fee Payments and Committee's Professional Fee Payments incurred after a Triggering Event exceed the Carve Out Amount; or (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtor and/or the Statutory Committee.

27.    <u>Limitations on the New DIP Facility, New DIP Collateral, and Carve Out</u>.  The New DIP Facility, New DIP Collateral and Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Agent, New DIP Lenders, the SQN DIP Agent, the SQN DIP Lenders, SQN Gamma, LLC, an affiliate of the SQN DIP Lenders (the "<u>Prepetition Agent</u>") or Prepetition Lender (as defined in the *Final Order Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364* [D.I. 171] (the "<u>SQN DIP Order</u>"), or their rights and remedies under (w) the New DIP Financing Documents, (x) the Prepetition Credit Documents, (y) the SQN DIP Credit Documents, or (z) this New DIP Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or the Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any

order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the New DIP Loan Outstandings, SQN DIP Facility Obligations or Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against any DIP Agent, New DIP Lender, SQN DIP Agent, SQN DIP Lenders, Prepetition Agent or Prepetition Lender;(iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent or any New DIP Lender of any rights and/or remedies under this New DIP Order, the New DIP Financing Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent or New DIP Lenders upon any of the New DIP Collateral (except as provided for in paragraph 21); or (v) obstructing in any manner Prepetition Lender's attempts to negotiate leases with the Debtor's landlords in Norcross, GA and Saginaw, MI; provided, however, that nothing herein shall prevent the Debtor from using the New DIP Facility in connection with (i) seeking or obtaining an extension of the time to assume or reject the leases in accordance with applicable law for the months of June and/or July 2018 or (ii) continuing to pay rent on such leases for the months of June and/or July 2018, provided further, however, that the Debtor, Statutory Committee, the New DIP Agent or the New DIP Lenders shall not attempt to cause the Collateral (as defined in the Order Granting Motion of SQN Asset Servicing LLC for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 [and the Order (Agreed) Granting Wanxiang America Corporation Relief from the Automatic Stay Relating to Certain Equipment and Spare Parts]) to be evicted or removed from the premises in June or July 2018 if the Prepetition Lender funds or pays for the rent for the leased premises for such months; (b) to make any distribution under a plan of reorganization in the Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required of New DIP

Lenders or under the New DIP Financing Documents; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor without the prior written consents of New DIP Lenders or required under the New DIP Financing Documents, (e) to object to, contest, or interfere with in any way the DIP Agent's or New DIP Lenders' enforcement or realization upon any of the New DIP Collateral once an Event of Default has occurred (except as provided for in paragraph 20); (f) to use or seek to use any insurance proceeds constituting New DIP Collateral without the consents required under the New DIP Financing Documents; (g) to incur Debt (as defined in the New DIP Credit Agreement) outside the ordinary course of business without the prior consents required under the New DIP Financing Documents; (h) to object to or challenge in any way the claims, liens, or interests (including interests in the Prepetition Collateral, SQN DIP Collateral or New DIP Collateral) held by or on behalf of any DIP Agent, New DIP Lender, SQN DIP Agent, SQN DIP Lenders, Prepetition Agent or Prepetition Lender; (i) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any DIP Agent, New DIP Lender, Prepetition Agent or Prepetition Lender; (j) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations, Prepetition Liens, SQN DIP Facility Obligations, liens pursuant to the SQN Credit Agreement, New DIP Loan Outstandings or New DIP Liens or any other rights or interests of any of the Prepetition Agent or Prepetition Lender, SQN DIP Agent or SQN DIP Lenders, DIP Agent or New DIP Lenders; or (k) to prevent (or attempt to prevent), hinder or otherwise delay the exercise by DIP Agent, any New DIP Lender, SQN DIP Agent, any SQN DIP Lender, Prepetition Agent or Prepetition Lender of any rights and remedies granted under this New DIP Order, provided that nothing in this paragraph 27 shall prohibit the Debtor or the Statutory

Committee from seeking to enforce the terms of this Final Order. Nothing herein shall be deemed to relieve the Debtor or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of any plan.

28.    No Third Party Rights. Except as explicitly provided for herein, this New DIP Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

29.    No Deemed Control. In making decisions to advance any extensions of credit under the New DIP Facility, or in taking any other actions related to this New DIP Order or the New DIP Financing Documents (including, without limitation, the exercise of its approval rights with respect to any budget), DIP Agent and New DIP Lenders shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), and DIP Agent's and New DIP Lenders' relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind.

30.    Section 506(c) Claims. Upon entry of this New DIP Order, no costs or expenses of administration which have been or may be incurred in the Case or any Successor Case at any time shall be charged against the DIP Agent, New DIP Lenders or any of their respective claims or the New DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable DIP Agent or New DIP Lender, and no such

-29-

consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

31.     <u>No Marshaling/Application of Proceeds</u>.  Upon entry of this New DIP Order, the DIP Agent and New DIP Lenders, shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the New DIP Collateral, and proceeds shall be received and applied pursuant to the New DIP Financing Documents.

32.     <u>Section 552(b)</u>.  Upon entry of this New DIP Order, the DIP Agent and the New DIP Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of them with respect to proceeds, product, offspring or profits of any of their respective collateral.

33.     <u>Discharge Waiver</u>.  Upon entry of this New DIP Order, the Debtor expressly stipulates, and the Court finds and adjudicates that, the New DIP Loan Outstandings shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the New DIP Loan Outstandings have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. Unless otherwise agreed to by the DIP Agent and New DIP Lenders, an Event of Default hereunder shall occur if the Debtor proposes or supports any plan of reorganization or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, of all New DIP Loan Outstandings and the cancellation, backing, or cash collateralization of all letters of credit issued under the New DIP Financing Documents.

34.   <u>Rights Preserved</u>.   Other than as expressly set forth in this New DIP Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, New DIP Lenders, SQN DIP Agent, SQN DIP Lenders, Prepetition Agent and Prepetition Lender are preserved.   Any right of the United States to assert a claim for set off against the proceeds of the AD/CVD Claim *and the Trade Case* is preserved, and the right of any party to contest that the United States has a valid right of set off against the proceeds of the AD/CVD Claim *and the Trade Case* is preserved.

35.   <u>No Waiver by Failure to Seek Relief</u>.   The failure of any DIP Agent, New DIP Lender, SQN DIP Agent, SQN DIP Lender, Prepetition Agent or Prepetition Lender to seek relief or otherwise exercise its rights and remedies under this New DIP Order, the New DIP Financing Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

36.   <u>Binding Effect of New DIP Order</u>.   Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this New DIP Order shall become valid and binding upon and inure to the benefit of the Debtor, DIP Agent, New DIP Lenders, SQN DIP Agent, SQN DIP Lenders, Prepetition Agent, Prepetition Lender and all other creditors of the Debtor, the Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or Successor Case.

37.   <u>No Modification of New DIP Order</u>.   An Event of Default hereunder shall occur if, until and unless the New DIP Loan Outstandings have been indefeasibly paid in full in cash, and all commitments to extend credit under the New DIP Facility have been terminated, the Debtor seeks or consents to, directly or indirectly:   (a) without the prior written consents required in the

-31-

New DIP Financing Documents, (i) any modification, stay, vacatur or amendment to this New DIP Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the New DIP Superpriority Claims, other than the Carve Out and the SQN DIP Facility Claims; and (b) without the prior written consents required under the New DIP Financing Documents, any lien on any of the New DIP Collateral with priority equal or superior to the New DIP Liens other than the SQN DIP Facility liens.  An Event of Default shall occur if the Debtor seeks any amendment, modification or extension of this New DIP Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the applicable DIP Agent or New DIP Lender.

38.    New DIP Order Controls.  In the event of any inconsistency between the terms and conditions of the New DIP Financing Documents or this New DIP Order, the provisions of this New DIP Order shall govern and control.

39.    Survival.  The provisions of this New DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing of the Case or Successor Case.  The terms and provisions of this New DIP Order, including the claims, liens, security interests and other protections granted to the DIP Agent and New DIP Lenders, pursuant to this New DIP Order and/or the New DIP Financing Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or

following dismissal of the Case or any Successor Cases, and shall maintain their priority as provided by this New DIP Order until all New DIP Loan Outstandings have been indefeasibly paid in full. The terms and provisions concerning the indemnification of the DIP Agent and/or New DIP Lenders shall continue in this Case, in any Successor Cases, following dismissal of this Case or any Successor Case, following termination of the New DIP Financing Documents and/or the repayment of the New DIP Loan Outstandings.

40.    Effect of this New DIP Order. This New DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry hereof.

41.    Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this New DIP Order according to its terms.

42.    Immediate Effectiveness. Notwithstanding Bankruptcy Rules 6003 and 6004 or any other Bankruptcy Rule, this New DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this New DIP Order.

Dated: May 29 2018
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

-33-