**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNIVA, INC., | ) | Case No. 17-10837 (KG) |
| | ) | |
| Debtors. | ) | **Re: Docket Nos. 941 & 1019** |

**MEMORANDUM ORDER**

The Court conducted an evidentiary hearing on February 28, 2019, on Debtor's Motion to Enforce Settlement Agreement (the "Motion"). D.I. 1019. The Debtor is Suniva, Inc. ("Debtor" or "Suniva"). SQN Asset Servicing, LLC ("SQN") opposed the Motion and filed an Objection to the Motion (D.I. 1046) and presented a witness at the hearing, James M. Modak, SQN's Chief Financial Officer, in support of the Objection. Debtor took the position that the Motion raised issues of law and therefore no evidence was needed. Debtor nonetheless presented the testimony of Christiano Amoruso of Lion Point Capital, L.P. ("Lion Point").

The Chapter 11 case has been hotly contested between Suniva and its Lender, Lion Point on one side, and SQN and Wanxiang Capital Corporation ("Wanxiang") on the other. For the sake of brevity, it is sufficient for the decision on the Motion for the Court to observe that on November 20, 2018, the Court approved a settlement by and among Debtor, Lion Point, SQN and Wanxiang (the "Settlement Order"). D.I. 941. It appeared that peace was at hand. It was not.

In the agreement containing the settlement terms (the "Settlement Agreement"), the parties resolved many of their disputes, and they,

a. dismissed litigation,

b. provided for the sale to Lion Point of SQN's interests in Debtor's post-petition lending facilities,

c. resolved SQN's objection to additional financing from Lion Point,

d. released SQN's and Wanxiang's remaining security interests in Debtor's property,

e. determined the treatment of SQN's and Wanxiang's deficiency claims under a future plan of reorganization, and

f. provided that Debtor waived its surcharge claims against SQN and Wanxiang.

The Settlement Agreement also provided that the parties would sign a lease governing the "Norcross Equipment" and a license agreement for Debtor's use of certain intellectual property. The parties have now consummated the Settlement Agreement, including exchanging money, and the Settlement Agreement cannot be undone.

SQN and Wanxiang refuse to enter into the Equipment Lease and License Agreement (the "Lease and License") which the Settlement Agreement clearly contemplated. SQN argues that there is one issue that dissuades it and apparently Wanxiang from entering into the Lease and License. As drafted by Debtor, the Lease and License places on SQN and Wanxiang the responsibility for the 2017 and 2018 personal property taxes totaling approximately $1.6 million. Both sides to the Settlement Agreement point to the other side to acknowledge responsibility for the taxes.

With the foregoing background, the Court rules on the Motion as follows:

1. The parties have performed the terms of the Settlement Agreement, except for SQN's and Wanxiang's execution of the Lease and License. Money has been paid and the other terms honored in accordance with the Settlement Agreement, but the Lease and License remains in limbo because – and only because – of the tax issues.

2. SQN has committed that "only a single, material issue remains -- responsibility for the approximate $1,600,000 in Debtor property tax liabilities related to the equipment prior to the date SQN took title in May 2018." Objection to the Motion ¶ 5 (footnote omitted).

3. The parties resolved the other two earlier open issues, namely, a collateral access agreement for SQN and certain indemnification issues.

4. The present dispute cries out for a solution. The Settlement Agreement requires SQN, Wanxiang and Debtor to enter into the Lease and License. "[n]o later than fourteen (14) business days after the Settlement Date . . ." which means by December 13, 2018 because "Settlement Date" is three business days after approval which occurred on November 20, 2018. It is now almost three months later. Enough.

5. The Court recognizes that the tax issues remain to be resolved. Debtor argues that when SQN foreclosed on Debtor's property, SQN became obligated to pay all outstanding taxes. Debtor cites *In re Milit*, 231 B.R. 604, 607 (Bankr. W.D. Tex. 1999).

6. SQN challenges Debtor's foreclosure argument and asserts that it should not have to pay $1.6 million in taxes for property it did not own at the time and foreclosure does not change the Debtor's earlier ownership and tax liability.

7. The Court is going to circumvent the tax issues in deciding the Motion, which Debtor suggested and the Court adopts.

8. The Court is clear that it has authority to interpret and enforce its own previously entered orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934). The Court also retained jurisdiction to determine matters relating to the Settlement Order.

9. The Court thus rules that with the exception of the tax issues, the terms of the Settlement Agreement are to be enforced. Again, with the exception of the tax issues set forth in the Lease and License at Section 18, which is attached to the Motion, the Court enforces the Lease and License. Debtor, Lion Point, SQN and Wanxiang shall be bound by its terms.

10. The Court is not ignoring or avoiding the tax issues. The tax issues, as previously noted, require a prompt decision but not in the ruling on the Motion. SQN claims that if taxes remain unpaid, the government authorities can take possession of the property. By doing so, the Debtor would be deprived of any settlement with the federal government of the AD/CVD claims. The AD/CVD Settlement is one of the driving forces which led to the Settlement Agreement. The issue of who pays the taxes is also important to Debtor and is germane to plan confirmation. Debtor must have a confirmed plan not later than April 10, 2019, as its lender, Lion Point, is requiring. Debtor must know where it stands on the $1.6 million of taxes due for its plan.

11. The Court must therefore address the party or parties which are responsible for the tax issues in dispute. The issues include what affect SQN's foreclosure has on who is responsible for the taxes in accordance with the Settlement Agreement. Or, does the tax obligation strictly run with the contemporaneous ownership of the equipment?

12. Therefore, the Court's enforcement of the Settlement Agreement does not include the personal tax obligations. Instead, the Court directs the parties to agree on a briefing schedule and the Court will hold an early argument of the tax issues on March 19, 2019, at 10:00 a.m., which will enable the Court to rule promptly.

SO ORDERED.

Dated: March 1, 2019

Kevin Gross
KEVIN GROSS, U.S.B.J.