**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNIVA, INC., | ) | Case No. 17-10837 (KG) |
| | ) | |
| Debtor. | ) | **Re: D.I. 1019** |

# MEMORANDUM OPINION

## BACKGROUND AND RELEVANT FACTS

Debtor Suniva Inc.'s ("Debtor") Chapter 11 bankruptcy case has a long and tortured history which the Court will not repeat in this Memorandum Opinion. It is sufficient for the present dispute to note that the parties, Debtor and SQN Asset Servicing, LLC ("SQN"), have fought long and hard on numerous issues which they have presented to the Court. The facts which follow are relevant to the present tax dispute between Debtor and SQN.

The issue waiting decision is whether Debtor is liable for the Government Units'[1] 2017 ad valorem taxes (the "2017 Subject Taxes") and 2018 ad valorem taxes (the "2018 Subject Taxes") (collectively, the "Subject Taxes") assessed against the Debtor's former equipment which SQN and Wanxiang American Corporation ("Wanxiang") foreclosed upon (the "Equipment")[2]; or whether Debtor is free of liability for the Subject Taxes, and the Equipment which SQN now owns is subject to foreclosure due to the encumbering

---

[1] The Government Units are comprised of the City of Norcross, Georgia and Gwinnett County, Georgia.

[2] The Equipment was formerly Debtor's located at a site in Norcross, Georgia. SQN foreclosed on the Equipment in 2018 and is therefore the owner.

tax liens.  The Court finds that Debtor is liable for payment of the Subject Taxes pursuant to the Settlement Agreement discussed below.  However, the Equipment remains subject to foreclosure because the tax liens survived SQN's and Wanxiang's foreclosure.  Consequently, the Court will order Debtor immediately to pay the Subject Taxes.

The dispute involves a number of issues.  Does the Court have jurisdiction and is the Court being asked to issue an advisory opinion?  Are the Subject Taxes time-barred in the bankruptcy because the Government Units failed to filed proofs of claim or requests for administrative claims?  Does Bankruptcy Code, Section 502(b)(3), render the taxes non-recourse against Debtor?  Does Bankruptcy Code, Section 503(b)(1)(D), bar claims for administrative expense for the 2018 Subject Taxes?  Does marshaling apply?  Does the Settlement Agreement encompass the Subject Taxes?

It is likely that the Government Units are time-barred from asserting claims and that any such claims are non-recourse against Debtor.  What would therefore remain is the Government Units' liens against the Equipment and the potential for foreclosure.  The Settlement Agreement, however, governs and the Court therefore finds it unnecessary to address the other delineated issues.  The Court's decision turns entirely on the Settlement Agreement which the Court approved by Order Approving the Global Settlement, dated November 20, 2018 (D.I. 941).

## JURISDICTION

The Court has jurisdiction over this matter and the judicial authority to ender a final order pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). In addition, the Court's ruling does not affect the Government Units who still have their liens.

## DISCUSSION

In the Court-approved Settlement Agreement, the Debtor and SQN, among others, settled their differences. The Settlement Agreement was broad in its coverage. It provided for dismissal of litigation, the sale to Debtor's DIP lender, Lion Point Capital, L.P. ("Lion Point") of SQN's interests and claims in post-petition lending facilities, releases and other important matters. The Settlement Agreement also required SQN and Wanxiang, together with Debtor, to sign a lease of the Equipment to Debtor and a license agreement covering Debtor's use of intellectual property which SQN then owned (the "Lease and License"). SQN then claimed that its refusal to sign the Lease and License stemmed from the dispute over who was responsible for the payment of the Subject Taxes. Debtor argued that it was not responsible or even subject to the Subject Taxes. SQN argued that since the tax liability attached on January 1 of each year and Debtor owned the Equipment on January 1, 2017 and January 1, 2018, that Debtor was responsible for the Subject Taxes. Debtor counter-argued that SQN was not required to pay the Subject Taxes but that the Subject Taxes encumbered the Equipment, i.e., followed the Equipment.

The Court held a hearing on the Motion to Enforce SQN's position and issued a Memorandum Order dated March 1, 2019 (D.I. 1067).  There the Court ruled that the Settlement Agreement compelled the parties to execute the Lease and License, but the Court carved out the tax dispute for a later hearing.  The Court held the hearing on February 28, 2019.  In the Memorandum Order, the Court ordered enforcement of the Settlement Agreement and ruled that Debtor, Lion Point, SQN and Wanxiang were bound by the terms of the Settlement Agreement.  The Court left the tax dispute for another day and another hearing.

It is most unfortunate that the Settlement Agreement, the actual settlement, left the parties to battle with each other over a matter involving approximately $1.6 million.  Section 16(b) of the Settlement Agreement states:

> (b) SQN and Wanxiang shall have no obligation to pay carrying costs of the Debtor's operations, exit costs or any other costs (except as provided for in Section 14(a) above) with respect to the Debtor's Chapter 11 Proceeding.

Section 14(a) does not bear on the tax dispute.  SQN also cites Section 11 of the Settlement Agreement which states:

> 11.    Releases.  Mutual releases, if any, among SQN, Wanxiang, Lion Point, the SPV, the Committee and the Debtor shall be set forth in the Plan and shall be effective on the Plan Effective Date.  Such releases shall be effective for only those claims arising before the Plan Effective Date.  The Debtor's estate shall have no obligations hereunder after the Plan Effective Date.  The Plan shall provide that any obligation of the Debtor hereunder that, but for the preceding sentence, would survive the Plan Effective Date, will become an obligation of the reorganized Debtor.

The terms "carrying costs," "exit costs" and "costs" are not defined in the Settlement Agreement and the parties do not provide a definition in their filings. Courts have recognized that "carrying costs" can include ad valorem taxes. *See, e.g., In re Wiggins*, 2018 WL 1137616, at *11 (Bankr. E.D.N.C. Feb. 28, 2018) (identifying what a carrying cost can include: "carrying costs such as ad valorem taxes . . ."); *Carroll v. Prosser (In re Prosser)*, 2013 WL 951063, at *6 & n.3 (D.V.I. Mar. 8, 2013) (noting that the bankruptcy court identified monthly carrying costs to include annual property taxes); *Dominion Fin. Corp. v. Haimil Realty Corp. (In re Haimil Realty Corp.)*, 546 B.R. 257, 264 (Bankr. S.D.N.Y. 2016) ("Dominion's treatment of real estate taxes as carrying costs is consistent with the normal use of that term." *See, e.g.,* 3-32 Warren's Weed New York Real Property § 32.110 (including taxes in the list of items that normally make up carrying costs)). While the above citations refer to ad valorem taxes on real and not personal property, that is of no consequence. An ad valorem tax is "a tax imposed proportionally on the value of something (esp. real property), rather than on its quantity or some other measure." *In re NVF Co.*, 394 B.R. 33, 43 (Bankr. De. Del. 2008), 394 B.R. at 43 (citing Black's Law Dictionary 51, (7th ed. 1999)). It is undisputed that an ad valorem tax is often assessed on personal property.

Ad valorem taxes include the Subject Taxes on personal property. As costs and carrying costs include ad valorem taxes, it follows that costs and the carrying costs include the Subject Taxes. As the Subject Taxes are "costs" and "carrying costs" under Section 16(b) of the Settlement Agreement, the Court need not determine whether the they are "exit costs or any other costs." The Settlement Agreement addresses the proper

allocation of responsibility for the Subject Taxes. Thus, the Debtor is liable for the Subject Taxes pursuant to the Settlement Agreement. The language in Section 11 makes it clear that the tax obligation will survive the Plan Effective Date and thereby become an obligation of the then reorganized Debtor.

Debtor argues that Section 16(b) does not obligate it, or SQN, to pay the Subject Taxes. However, Debtor will have to pay the Subject Taxes if it expects to confirm its Plan. The Settlement Agreement resolved the issues between Debtor and SQN and given Section 16(b), the payment of the Subject Taxes was settled as Debtor's responsibility.[3]

## **CONCLUSION**

For the foregoing reasons, the Court holds that the Debtor is liable for the Subject Taxes pursuant to the Settlement Agreement and the Equipment is also subject to foreclosure due to the encumbering 2017 Tax Liens surviving SQN's foreclosure. Accordingly, the Court, in granting the Debtor's Motion to Enforce Settlement Agreement, orders the Debtor immediately to pay the 2017 and 2018 Subject Taxes and any interest and penalties.

Dated: March 25, 2019

_Kevin Gross_
KEVIN GROSS, U.S.B.J.

---

[3] The other consideration which gives rise to the requirement that Debtor pay the Subject Taxes is that SQN must remain in possession of the Equipment if it and Debtor are to share in the proceeds of any AD/CVD settlement. Foreclosure by the Governmental Units could destroy that eventuality and with it would establish an important loss to Debtor.