**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNIVA, INC., [1] | ) | Case No. 17-10837 (KG) |
| | ) | |
| Debtor. | ) | **Proposed Hearing Date: April 3, 2019 at 11:00 a.m.** |
| | ) | **Proposed Objection Deadline:  April 3, 2019 at 11:00 a.m.** |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTOR TO ENTER INTO AN AMENDMENT TO
THE SECOND LION POINT DIP CREDIT AGREEMENT**

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") for entry of an order, pursuant to sections 105(a), 362 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Bankruptcy Rules and Rules 2002-1 and 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtor to enter into an amendment (the "DIP Amendment") to the existing Second Lion Point DIP Credit Agreement (as defined herein). In support of this Motion, the Debtor respectfully states as follows:

**I.      JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

---

[1]      The last four digits of the Debtor's federal tax identification number is 2418.  The Debtor's corporate headquarters is located at 5765 Peachtree Industrial Blvd, Norcross, Georgia 30092.

## II.    BACKGROUND

3.    On April 17, 2017, the Debtor filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On April 27, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102.  No trustee or examiner has been appointed.

### A.    The Second Lion Point DIP Credit Agreement and the Second Lion Point DIP Order

5.    On October 23, 2018, the Debtor filed the *Debtor's Motion for an Order (I) Authorizing Debtor to Obtain Unsecured Postpetition Financing and Grant Administrative Expense Status Pursuant to 11 U.S.C. §§ 105(a) and 364(c); and (II) Granting Related Relief* (the "Second Lion Point DIP Motion") [D.I. 896].  The Second Lion Point DIP Motion requested authority for, among other things, the Debtor to obtain unsecured, superpriority postpetition financing (the "Second Lion Point DIP Facility") consisting of a delayed-draw term loan facility in an aggregate amount not to exceed $3,444,943 from Lion Point Capital, LP or one of its affiliates (the "DIP Agent"), and the lenders party thereto (the "Lion Point DIP Lenders").

6.    On November 20, 2018, the Court entered its *Final Order Authorizing Unsecured Post-Petition Financing Pursuant to 11 U.S.C. § 364* [D.I. 943] (the "Second Lion Point DIP Order").  The Second Lion Point DIP Order authorized the Debtor to enter into the Second Lion Point DIP Facility pursuant to the debtor-in-possession credit agreement (as may be amended, supplemented, restated, or otherwise modified from time to time, the "Second Lion Point DIP Credit Agreement").

7.      On February 19, 2019, the Debtor filed the *Chapter 11 Plan of Reorganization for Suniva, Inc.* [D.I. 1035].  On March 6, 2019, the Debtor filed the *Amended Chapter 11 Plan of Reorganization for Suniva, Inc.* [D.I. 1083-1] (the "Plan").

8.      On March 8, 2019, the Court entered its *Order (A) Approving the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballots and Notices in Connection Therewith, (D) Establishing the Plan Confirmation Schedule, and (E) Granting Related Relief* [D.I. 1094] that, among other things, scheduled a hearing on confirmation of the Plan on April 9, 2019.

**B.      The Tax Order**

9.      On March 25, 2019, the Court entered its Order [D.I. 1144] (the "Tax Order"), requiring the Debtor to pay "immediately, but in any event before the hearing on the confirmation of the Debtor's plan," to the City of Norcross, Georgia, and Gwinnett County, Georgia (the "Government Units") "the ad valorem taxes and any interest and penalties which are due for 2017 and 2018 and make certain that the tax liens arising from such taxes are marked 'satisfied.'" Tax Order at 2.

10.     On March 29, 2019, the Debtor filed its Request for Guidance and Status Conference Concerning the Court's Memorandum Opinion and Related Order [D.I. 1155] (the "Status Conference Request").  In the Status Conference Request, the Debtor noted that it wishes to comply with the Tax Order but does not have sufficient funds available under the Second Lion Point DIP Facility.[2]  The Debtor only has approximately $660,000 in availability under the

---

[2]      The Debtor also noted that it was seeking (a) guidance regarding whether it is required to pay the 2017 City of Norcross ad valorem taxes for which no claim was filed and no lien was asserted and (b) clarification regarding the requirement to obtain evidence of satisfaction of the tax liens.

Second Lion Point DIP Facility and will need to draw on those remaining amounts to continue to pay employee, utilities, and other obligations between now and the effective date of the Plan.

11.     The Debtor has requested payoff quotes from the Government Units and attempted to determine whether the tax liens can be marked "satisfied" by the April 9th confirmation hearing.  As of the filing of the Motion, the Debtor has only received payoff quotes from the Gwinnett County Tax Commissioner.[3]    Additionally, the Gwinnett County Tax Commissioner's office has verbally informed the Debtor that the typical time to obtain evidence that a tax lien has been marked "satisfied" is six to nine weeks, but the Gwinnett County Tax Commissioner's office may be able provide evidence on the same day as payment if the Debtor is able to wire funds.

### C.     The DIP Amendment

12.     The DIP Amendment will provide the Debtor with the ability to borrow sufficient funds to enable the Debtor to comply with the Tax Order.  In order to pay the Government Units, the Debtor seeks to increase the total commitments under the Second Lion Point DIP Credit Agreement in an amount sufficient to pay the Government Units in full as set forth in the Tax Order (the "Commitment Increase").  The exact amount of the requested Commitment Increase is presently unknown because the Debtor does not know if it has to pay the 2017 City of Norcross taxes (if not barred, estimated to be at least $166,000 with interest) and the Debtor does not have final payoff amounts from the City of Norcross, but the total amount that may be necessary could be at least $1.9 million.  For the avoidance of doubt, funds lent under the DIP Amendment shall also be unsecured in accordance with the terms of the Second Lion Point DIP Credit Agreement.

---

[3]     As of the filing of the Motion, the City of Norcross has not responded to Debtor's inquiries.  The Debtor's representatives will continue to work to obtain payoff quotes from the City of Norcross.

13.     The Debtor submits that no updated budget is necessary, given that the DIP Amendment funding from the Lion Point DIP Lenders will adhere to the Debtor's estate only briefly before immediately being transferred to the Government Units, without resulting in any modification to any other agreed-upon budget terms.

## II.     DISCUSSION

14.     By this emergency Motion, and pursuant to sections 105(a), 362, and 364 the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Bankruptcy Rules and Rules 2002-1, and 4001-2 of the Local Rules, the Debtor requests that this Court enter an order approving and authorizing the Debtor to enter into the DIP Amendment.

15.     The Debtor submits that entry of an order approving the proposed DIP Amendment is necessary and appropriate to enable the Debtor to pay the Government Units as expeditiously as possible.  The salient terms of the proposed DIP Amendment have been and continue to be negotiated in good faith, at arm's length, as well as pursuant to the Debtor's business judgment in accordance with the Second Lion Point DIP Credit Agreement and the Second Lion Point DIP Order.

16.     Bankruptcy courts consistently defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.  See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment…[and were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); cf. Group of Inst. Investors v. Chicago, Mil., St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions regarding assumption or rejection of leases are left to business judgment of the debtor); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to

IMPAC 6127892V.1

the board room and not to this Court."). In fact, "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." <u>Richmond Leasing Co. v. Capital Bank, N.A.</u>, 762 F.2d 1303, 1311 (5th Cir. 1985).

17.     Consistent with this authority, the Debtor respectfully submits that the Court should approve the Debtor's decision to accept and enter into the DIP Amendment. Without the modification contemplated therein, the Debtor's ability to comply with the Tax Order and otherwise reorganize and emerge from chapter 11 will be severely curtailed.

## III.    NOTICE

18.     Notice of this Motion will be provided to (i) the Office of the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to Wanxiang America Corporation; (iv) counsel to the DIP Agent for itself and for the Lion Point DIP Lenders; (v) the Internal Revenue Service; (vi) counsel to SQN Asset Servicing, LLC; (vii) the Government Units; and (viii) any party requesting notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the Debtor respectfully submits that no other or further notice is necessary.

## IV.    NO PRIOR REQUEST

19.     No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief set forth herein and such other and further relief as may be just and proper.

Dated:  April 1, 2019
        Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**


*/s/ R. Stephen McNeill*
Jeremy W. Ryan (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192


*Co-Counsel to the Debtor and Debtor in Possession*

-and-

**KILPATRICK TOWNSEND & STOCKTON LLP**
Todd C. Meyers, Esq.
Colin M. Bernardino, Esq.
1100 Peachtree Street NE
Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555


*Counsel to the Debtor and Debtor in Possession*

IMPAC 6127892V.1