# Exhibit 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| SUNIVA, INC., | ) ) | Case No. 17-10837 (KG) |
| Debtor.[1] | ) ) ) ) | |

### **THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR SUNIVA, INC.**

KILPATRICK TOWNSEND & STOCKTON LLP
Todd C. Meyers, Esq.
Colin M. Bernardino, Esq.
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

POTTER ANDERSON & CORROON LLP
Jeremy W. Ryan, (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

*Counsel for the Debtor and Debtor in Possession*

Dated: ~~March 6,~~ April 5, 2019

---

[1] The last four digits of the Debtor's federal tax identification number are 2418. The Debtor's corporate headquarters is located at 5765 Peachtree Industrial Blvd., Norcross, Georgia 30092.

# TABLE OF CONTENTS

Page

ARTICLE 1. DEFINITIONS AND INTERPRETATION ................................................. 1

    1.1    Definitions ........................................................................................... 1
    1.2    Interpretation; Application of Definitions and Rules of Construction ......... 15
    1.3    Appendices and Plan Documents ...................................................... 15

ARTICLE 2. UNCLASSIFIED CLAIMS .................................................................. 15

    2.1    Administrative Expense Claims ......................................................... 15
    2.2    DIP Claims. .................................................................................... 17
    2.4    Fee Claims ...................................................................................... 18
    2.5    Priority Tax Claims .......................................................................... 18
    2.6    U.S. Trustee Fees ............................................................................ 19

ARTICLE 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......... 19

    3.1    Classification of Claims and Interests ................................................ 19
    3.2    Treatment of Claims and Interests ..................................................... 20

ARTICLE 4. 23

ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR
    MORE CLASSES OF CLAIMS OR INTERESTS ................................................. 23

    4.1    Classes Entitled To Vote .................................................................. 23
    4.2    Acceptance by Impaired Classes ....................................................... 23
    4.3    Elimination of Vacant Classes .......................................................... 23
    4.4    Confirmation Pursuant to Bankruptcy Code Section 1129(b) (Cramdown ..... 23

ARTICLE 5. MEANS FOR IMPLEMENTATION ...................................................... 23

    5.1    Prior Compromise and Settlement of Disputes ................................... 23
    5.2    Issuance of New Ownership Interests ................................................ 24
    5.3    Cancellation of Securities and Agreements ........................................ 24
    5.4    Private Company ............................................................................. 25
    5.5    Section 1145 Exemption .................................................................. 25
    5.6    Sources of Consideration for Plan Distributions .................................. 25
    5.7    Corporate Existence ........................................................................ 25
    5.8    Amended Certificate of Incorporation and Amended By-Laws ............... 25
    5.9    Reorganized Debtor's Board of Directors ........................................... 26
    5.10   Reorganized Debtor's Officers .......................................................... 26
    5.11   Vesting of Assets ............................................................................ 26
    5.12   Corporate Action ............................................................................ 26
    5.13   Effectuating Documents; Further Transactions .................................... 27
    5.14   Final Settlement of Claims and Interests ............................................ 27
    5.15   Section 1146 Exemption from Certain Taxes and Fees ......................... 27
    5.16   D&O Liability Insurance Policies and Indemnification Provisions ............ 2728

5.17    Preservation of Rights and Causes of Action ............................................ 28
5.18    Management Incentive Plan ........................................................................ 28
5.19    Comprehensive Settlement of Claims and Controversies ......................... 28
5.20    Unsecured Creditor Distribution ................................................................ 28
5.21    WARN Act Class Settlement ..................................................................... 29

ARTICLE 6. PROCEDURES FOR RESOLVING CLAIMS ................................................. 30

6.1    Allowance of Claims ................................................................................... 30
6.2    Objections to Claims .................................................................................. 30
6.3    Estimation of Claims ..................................................................................
    31 30
6.4    Claims Paid or Payable by Third Parties. .................................................. 31
6.5    Disputed Claim Reserve. ............................................................................
    32 31
6.6    Distributions After Allowance. ...................................................................
    32 31
6.7    Insured Claims. ........................................................................................... 32

ARTICLE 7. PROVISIONS GOVERNING DISTRIBUTIONS .............................................
34 33

7.1    Satisfaction of Claims ................................................................................
    34 33
7.2    No Partial Distributions on Disputed Claims .............................................
    34 33
7.3    Delivery of Plan Distributions ....................................................................
    34 33
7.4    No Post-Petition Interest on Claims. ..........................................................
    36 35
7.5    Withholding and Reporting Requirements. .................................................
    36 35

ARTICLE 8. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..............................
37 36

8.1    General Treatment. .....................................................................................
    37 36
8.2    Determination of Cure Disputes .................................................................
    37 36
8.3    Payments Related to Assumption of Contracts and Leases. .......................
    38 37
8.5    Compensation and Benefits. .......................................................................
    39 38

ARTICLE 9. PLAN ADMINISTRATOR ...........................................................................
39 38

9.1    Generally. ....................................................................................................
    39 38

9.2      Purpose. ...................................................................................... 3938

9.3      Compensation. ................................................................................... 39

9.4      Additional Terms and Conditions Applicable to the Plan Administrator. ...................
         4039

ARTICLE 10.  CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...........................
             4039

10.1     Conditions Precedent to Confirmation. ....................................................
         4039

10.2     Conditions Precedent to the Effective Date ...............................................
         4039

10.3     Satisfaction and Waiver of Conditions Precedent ........................................
         4140

10.4     Effect of Non-Occurrence of Conditions to the Effective Date ..........................
         4140

ARTICLE 11.  EFFECT OF CONFIRMATION .....................................................................
             4241

11.1     Binding Effect ..............................................................................
         4241

11.2     Discharge of Claims Against and Interests in the Debtor .................................
         4241

11.3     Term of Pre-Confirmation Injunctions or Stays. .........................................
         4241

11.4     Injunction. ..................................................................................
         4241

11.5     Releases. .....................................................................................
         4342

11.6     *Exculpation and Limitation of Liability.* .................................................
         4544

11.7     *Injunction Related to Releases and Exculpation.* ........................................
         4544

11.8     Retention of Causes of Action/Reservation of Rights .....................................
         4544

ARTICLE 12.  RETENTION OF JURISDICTION ...................................................................... 45

ARTICLE 13.  MISCELLANEOUS PROVISIONS ................................................................
             4746

13.1     Dissolution of Committee ..................................................................
         4746

13.2     Modification of Plan .......................................................................
         4847

13.3     Revocation or Withdrawal of Plan ........................................................
         4847

13.4    Allocation of Plan Distributions Between Principal and Interest .................................... 4847

13.5    Severability ........................................................................................................................ 4847

13.6    Governing Law ................................................................................................................... 4948

13.7    Inconsistency ...................................................................................................................... 4948

13.8    Time .................................................................................................................................... 4948

13.9    Exhibits .............................................................................................................................. 4948

13.10   Notices ................................................................................................................................ 4948

13.11   Filing of Additional Documents ....................................................................................... 5149

4

## INTRODUCTION[2]

Suniva, Inc., the debtor in possession in the above-captioned case, proposes the following chapter 11 plan of reorganization for the resolution of the Claims against and Interests in the Debtor.

In reviewing the Plan, readers should refer to the Disclosure Statement, including the exhibits and supplements thereto, for a discussion of the Debtor's business history and operations, financial projections, risk factors, a summary and analysis of the Plan, and certain related matters including, among other things, certain tax matters and the securities and other consideration to be issued and distributed under the Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Sections 13.2 and 13.3 of the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

The only Persons entitled to vote on the Plan are holders of Allowed Claims in Classes 3̶4 and 4̶,5.  Such Persons are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan.  No materials other than the Disclosure Statement and the respective schedules, notices, and exhibits attached thereto and referenced therein have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE 1.

## DEFINITIONS AND INTERPRETATION

### 1.1    Definitions

.

The following terms shall have the meanings set forth below.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.

1.1.1    "*503(b)(9) Claims*" means Claims against the Debtor that have been timely and properly filed prior to the Bar Date and that are granted administrative expense priority treatment pursuant to Bankruptcy Code section 503(b)(9).

1.1.2    "*510 Claims*" means Claims against the Debtor that are subordinated pursuant to Bankruptcy Code section 510(b) or (c).

1.1.3    "*Administrative Expense Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of the kind specified in Bankruptcy Code section 503(b) and entitled to priority pursuant to Bankruptcy Code sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 507(b) (other than an LP DIP Claim, a Fee Claim or U.S. Trustee Fees) incurred during the period from the Petition Date to the Effective Date, including, without limitation:  (a) any actual and necessary costs and expenses of

---

[2]    All capitalized terms used but not defined in this Introduction have the meanings set forth in article 1 of the Plan.

preserving the Estate, any actual and necessary costs and expenses of operating the Debtor's business, and any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case; and (b) 503(b)(9) Claims.

1.1.4    "***Aggregate Administrative/Priority Claims***" means the total aggregate amount of all Allowed Administrative Expense Claims, U.S. Trustee Fees, Allowed Priority Tax Claims and Allowed Other Priority Claims.  A schedule of the Aggregate Administrative/Priority Claims as of December 1, 2018 is included in the Plan Supplement.

1.1.5    "***Aggregate Administrative/Priority Claim Cap***" means $1,000,000.

1.1.6    "***Allowed Claim or Allowed _____ Claim***" (with respect to a specific type of Claim, if applicable) means (a) any Claim (or a portion thereof) against the Debtor as to which no action to dispute, deny, or otherwise limit recovery with respect thereto, or alter the priority thereof (including a claim objection), has been timely commenced within the applicable period of limitation fixed by the Plan or applicable bankruptcy law, or (b) any Claim against the Debtor or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim (x) that was incurred by the Debtor in the ordinary course of business during the Chapter 11 Case to the extent due and owing without defense, offset, recoupment, or counterclaim of any kind and (y) that is not otherwise disputed.

1.1.7    "***Amended By-Laws***" means the amended and restated by-laws for the Reorganized Debtor, substantially final forms of which will be contained in the Plan Supplement.

1.1.8    "***Amended Certificate of Incorporation***" means the amended and restated certificate of incorporation (or articles of incorporation, as applicable) for the Reorganized Debtor, substantially final forms of which will be contained in the Plan Supplement.

1.1.9    "***Aurora Retention Order***" means that *Order Authorizing the Debtor to Retain Aurora Management Partners, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring Related Services,* Nunc Pro Tunc *to the Petition Date* entered in this Chapter 11 Case [D.I. 157].

1.1.10    "***Avoidance Actions***" means all Causes of Action arising under Sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code and any proceeds therefrom.

1.1.11    "***Bankruptcy Code***" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.1.12    "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

1.1.13    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as amended from

time to time, as applicable to the Chapter 11 Case, and the Local Bankruptcy Rules for the District of Delaware.

1.1.14    "*Bar Date*" means, as applicable, (a) any deadline for filing proofs of Claim, as established by an order of the Bankruptcy Court, including the Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, and (III) Providing Certain Supplemental Relief [D.I. 313], or (b) the deadline for filing certain Administrative Expense Claims that arose during the period from the Petition Date through and including January 31, 2018, as established by the First Administrative Expense Claim Bar Date Order [D.I. 507], or (c) any deadline for filing a Claim or making a request for payment as established under this Plan.

1.1.15    "*Business Day*" means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

1.1.16    "*Cash*" means the legal currency of the United States and equivalents thereof.

1.1.17    "*Cash Purchase Price*" means $1,150,000.00 less any amounts advanced under the LP Unsecured DIP Credit Agreement in excess of $~~2,400,000.00.~~2,400,000.00, not including any amounts funded under the LP Unsecured DIP Credit Agreement to pay Debtor's tax liability pursuant to the *Order Authorizing the Debtor to Enter Into an Amendment to the Second Lion Point DIP Credit Agreement* [D.I. 1171].

1.1.18    "*Causes of Action*" means any and all actions, causes of action (including causes of action under Bankruptcy Code sections 510, 544, 545, 546, 547, 548, 549, 550, and 553), suits, accounts, controversies, obligations, judgments, damages, demands, debts, rights, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, defenses, counterclaims and Claims, whether known or unknown, reduced to judgment or not, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or tort, arising in law, equity, or otherwise, and any proceeds therefrom.

1.1.19    "*Chapter 11 Case*" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and captioned *In re Suniva, Inc.*, Case No. 17-10837 (KG).

1.1.20    "*Claim*" shall have the meaning set forth in Bankruptcy Code section 101(5).

1.1.21    "*Claims Agent*" means Epiq Corporate Restructuring, LLC, as successor to Garden City Group, LLC, or any other entity approved by the Bankruptcy Court to act as the Debtor's claims and noticing agent pursuant to 28 U.S.C. § 156(c).

1.1.22    "*Claims Register*" means the official register of Claims against the Debtor maintained by the Claims Agent.

1.1.23    "*Class*" means each category of Claims and Interests established under article 3 of the Plan pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

1.1.24    "*Collateral*" means any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.1.25    "*Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Case on April 27, 2017 in accordance with Bankruptcy Code section 1102, which consists of (a) Guangzhou Ruxing Technology Development, Co., Ltd. (b) Heraeus Precious Metals North America Conshohocken LLC; (c) Veritiv Operating Company; (d) Wacker Chemie AG, c/o Wacker Chemical Corporation; and (e) Woongjin Energy Co., Ltd.

1.1.26    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

1.1.27    "*Confirmation Hearing*" means a hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.1.28    "*Confirmation Order*" means the order of the Bankruptcy Court, confirming the Plan in form and substance acceptable to the Debtor, Equity Purchaser and Committee.

1.1.29    "*Convenience Claim*" means any Claim that would otherwise be a General Unsecured Claim and that is (i) greater than $0 and less than or equal to $25,000.00 in amount or (ii) greater than $25,000.00 and irrevocably reduced to $25,000.00, at the election of the holder of the Claim as evidenced on the ballot submitted by such holder; *provided, however*, that (i) a General Unsecured Claim (or multiple Claims held by the same holder) may not be subdivided into multiple Claims of $25,000.00 or less for purposes of receiving treatment as a Convenience Claim and (ii) no Convenience Claim shall exceed the Allowed Claim amount of $25,000.00.

1.1.30    "**Convenience Class Consideration**" means Cash in the amount of $150,000.00.

1.1.31    "*CSPV AD/CVD 1*" means collectively, (i) that certain antidumping/countervailing duty investigation and determination A-570-979 (Crystalline Silicon Photovoltaic Cells, Whether Or Not Assembled Into Modules from the People's Republic of China) and (ii) that certain antidumping/countervailing duty investigation and determination C-570-980 (Crystalline Silicon Photovoltaic Cells; Whether Or Not Assembled Into Modules from the People's Republic of China).

1.1.32    "*CSPV AD/CVD 2*" means collectively, (i) that certain antidumping/countervailing duty investigation and determination A-570-010 (Crystalline Silicon Photovoltaic Products from the People's Republic of China), (ii) that certain antidumping/countervailing duty investigation and determination C 570-011 (Crystalline Silicon Photovoltaic Products from the People's Republic of China) and (iii) that certain

antidumping/countervailing duty investigation and determination A-583-853 (Crystalline Silicon Photovoltaic Products from Taiwan).

1.1.33    "*Cure Amount*" means the amount of any monetary defaults arising under an Executory Contract or Unexpired Lease that has be satisfied pursuant to Bankruptcy Code section 365(b)(1) as a condition of its assumption.

1.1.34    "*Cure Dispute*" means a dispute regarding (a) the Cure Amount; (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) under the Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to the proposed assumption of a contract or lease.

1.1.35    "*Cure Schedule*" means the schedule setting forth the Cure Amount, if any, for each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan.

1.1.36    "*D&O Liability Insurance Policy*" means any insurance policy of the Debtor for directors', managers', and officers' liability.

1.1.37    "*Debtor*" means Suniva, Inc., in its capacity as a debtor in possession in the Chapter 11 Case.

1.1.38    "*Deficiency Claim*" means any Claim against the Debtor in the amount by which the allowed aggregate amount of the Claim exceeds the value of the Collateral securing the holder's Claim.

1.1.39    "*Disallowed*" means a finding of the Bankruptcy Court in a Final Order, or provision in the Confirmation Order providing that a Disputed Claim shall not be an Allowed Claim.

1.1.40    "*Disclosure Statement*" means the disclosure statement in respect of the Plan and all exhibits, schedules, and supplements, either in its present form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.41    "*Disputed*" means, with respect to any Claim against the Debtor, including any portion thereof, any Claim (a) that is listed on the Schedules as contingent, unliquidated, or disputed, or (b) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and Bankruptcy Rules or that is otherwise disputed by the Debtor or Reorganized Debtor or the Plan Administrator, as applicable, in accordance with applicable bankruptcy law, which objection, request for estimation, or dispute has not been determined by a Final Order, or (c) with respect to which a proof of claim was required to be filed by order of the Bankruptcy Court but as to which such proof of claim was not timely or properly filed.

1.1.42    "*Distribution Date*" means any date a Plan Distribution is to be made.

1.1.43    "***Distribution Record Date***" means, with respect to all Classes for which Plan Distributions are to be made, the third (3rd) Business Day after the Confirmation Date or such other later date as shall be established by the Bankruptcy Court in the Confirmation Order.

1.1.44    "***DOE Claim***" means Claim No. 50 filed in the Chapter 11 Case by the U.S. Department of Energy.

1.1.45    "***Effective Date***" means the date specified by the Debtor in a notice, the form and substance of which shall be reasonably acceptable to the Debtor, the Equity Purchaser and the Committee, filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in the Plan are satisfied or waived in accordance with the Plan, and no stay of the Confirmation Order is in effect.

1.1.46    "***Equipment Lease and IP License Agreement***" means the equipment lease and intellectual property license agreement, ~~either (i) entered into by and among SQN, WX, the Debtor, and Granite Holdings,~~ as required by section 6(a) of the Settlement Agreement, ~~or (ii) as may be~~the terms of which were imposed by the Bankruptcy Court ~~pursuant to the Motion to Enforce Settlement Agreement [D.I. 1019]~~[D.I. 1067], and modified by agreement of the parties, such agreed modifications being reflected in the Plan Supplement [D.I. 1165].

1.1.47    "***Equity Purchase Price***" means the LP DIP Claims plus the Cash Purchase Price.

1.1.48    "***Equity Purchaser***" means Granite Holdings I, LLC.

1.1.49    "***Estate***" means the estate created in the Chapter 11 Case pursuant to Bankruptcy Code section 541.

1.1.50    "***Exculpated Parties***" means collectively, in each case solely in their capacity as such (a) the Debtor, (b) the Committee and each Committee member, and (c) ~~Lion Point, (d) the Equity Purchaser, and (e)~~ with respect to each entity in sections (a) ~~through~~and (d~~b~~) hereof, each of their ~~respective predecessors, successors, and assigns, current shareholders, affiliates, subsidiaries, principals, employees, agents,~~ officers (including the Debtor's Chief Restructuring Officer), directors, ~~managers, trustees, partners, members, professionals, representatives, advisors (including~~Professional Persons (including, for purposes of this definition, Aurora Management Partners, Inc.)~~, attorneys, financial advisors, accountants, investment bankers, and consultants; *provided, however*, that such attorneys and professional advisors shall only include those that provided services related to this Chapter 11 Case.~~

1.1.51    "***Executory Contract***" means any contract to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 and 1123.

1.1.52    "***Fee Claim***" means a Claim by a Professional Person for compensation, indemnification, or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1103(a) in connection with the Chapter 11 Case, including, without limitation, in connection with final fee applications of such Professional Persons.

1.1.53    "***Final Order***" means an order, ruling, or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in the Debtor's Chapter 11 Case (or on the docket of such other court of competent jurisdiction), which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment; *provided, further*, that the susceptibility of a Claim to a challenge under Bankruptcy Code section 502(j) shall not render a Final Order not a Final Order

1.1.54    "***First Administrative Expense Claim Bar Date***" means March 28, 2018.

1.1.55    "***First Administrative Expense Claim Bar Date Order***" means that certain Order [D.I. 507] establishing the First Administrative Expense Claim Bar Date for asserting certain Administrative Expense Claims that arose during the period from the Petition Date through and including January 31, 2018.

1.1.56    "***First DIP Credit Agreement***" means that certain Debtor-in-Possession Credit Agreement, dated as of May 19, 2017, by and among the Debtor, Lion Point, as successor to SQN as administrative agent and collateral agent and the lenders party thereto (as amended, modified or supplemented from time to time).

1.1.57    "***First DIP Credit Documents***" means the First DIP Credit Agreement and the First Final DIP Orders, and any and all and all related or ancillary documents and agreements related thereto, including, without limitation, all notices, guarantees, security agreements, and mortgages contemplated thereby.

1.1.58    "***First DIP Facility Claims***" means the aggregate outstanding amount of the Obligations (as defined in the First DIP Credit Agreement) as of the Effective Date.

1.1.59    "***First DIP Final Orders***" means (i) the Final Order Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364 [D.I. 171], (ii) the Order Authorizing the Debtor to Enter into an Amendment to the DIP Credit Agreement [D.I. 354], (iii) the Order Authorizing the Debtor to Enter into a Second Amendment to the DIP Credit Agreement [D.I. 445], (iv) the Order Authorizing the Debtor to Enter into a Third Amendment to the DIP Credit Agreement [D.I. 527] and (v) the Order Authorizing the Debtor to Enter into a Fourth Amendment to the DIP Credit Agreement [D.I. 636], as each may be further amended, modified or supplemented.

1.1.60    "***General Unsecured Claim***" means any unsecured Claim against the

Debtor not entitled to priority in payment as specified in Bankruptcy Code section 507(a), except for Convenience Claims, 510 Claims, including Claims arising out of the rejection of Executory Contracts and Unexpired Leases.

1.1.61    "*Impaired*" means impaired within the meaning of Bankruptcy Code section 1124.

1.1.62    "*Indemnification Provisions*" means each of the indemnification provisions, agreements, or obligations in place as of the Petition Date, whether in the bylaws, certificate of incorporation, or other formation documents of the Debtor or board resolutions or employment contracts in favor of the Debtor, and/or the current directors, officers, employees, attorneys, other professionals and agents of the Debtor.

1.1.63    "*Interest*" means an ownership interest in the Debtor, represented by shares of common or preferred stock or any other instrument, whether or not certificated, transferable, voting or denominated "stock" or a similar equity security, or any option, warrant, or right, contractual or otherwise, to acquire any such ownership interest.

1.1.64    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [D.I. 162].

1.1.65    "*Landlord*" means Edlen Peachtree, LLC and CH Peachtree Associates, LLC, collectively as landlord for the Debtor's facility at 5765-5775 Peachtree Industrial Blvd., Norcross, Georgia 30092.

1.1.66    "*Lien*" has the meaning set forth in Bankruptcy Code section 101(37).

1.1.67    "*Lion Point*" means Lion Point Capital, L.P. together with Lion Point Master, L.P. and their affiliates.

1.1.68    "*LP DIP Claims*" means, collectively, the First DIP Facility Claims, the LP Secured DIP Facility Claims, and the LP Unsecured DIP Facility Claims.

1.1.69    "*LP Secured DIP Credit Agreement*" means that certain Debtor-in-Possession Credit Agreement dated as of June 7, 2018, by and among the Debtor, Lion Point as administrative agent and collateral agent, and the lenders party thereto (as amended, modified or supplemented from time to time).

1.1.70    "*LP Secured DIP Credit Documents*" means the LP Secured DIP Credit Agreement and the LP Secured DIP Final Order and all related or ancillary documents and agreements related thereto, including, without limitation, all notices, guarantees, security agreements, and mortgages contemplated thereby.

1.1.71    "*LP Secured DIP Facility Claims*" means the aggregate outstanding amount of the Obligations (as defined in the LP Secured DIP Credit Agreement), as of the Effective Date.

8

1.1.72 "**LP Secured DIP Final Order**" means the Final Order Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364 [D.I. 702], as it may be further amended, modified or supplemented.

1.1.73 "**LP Unsecured DIP Credit Agreement**" means that certain Debtor-in-Possession Credit Agreement dated as of December 3, 2018, by and among the Debtor, Lion Point as administrative agent and collateral agent, and the lenders party thereto (as amended, modified or supplemented from time to time).

1.1.74 "**LP Unsecured DIP Credit Documents**" means the LP Unsecured DIP Credit Agreement and the LP Unsecured DIP Final Order and all related or ancillary documents and agreements related thereto, including, without limitation, all notices, guarantees, security agreements, and mortgages contemplated thereby.

1.1.75 "**LP Unsecured DIP Facility Claims**" means the aggregate outstanding amount of the Obligations (as defined in the LP Unsecured DIP Credit Agreement), as of the Effective Date.

1.1.76 "**LP Unsecured DIP Final Order**" means the Final Order Authorizing Unsecured Post-Petition Financing Pursuant to 11 U.S.C. § 364 [D.I. 943], as it may be further amended, modified or supplemented.

1.1.77 "**Management Incentive Plan**" means any management equity incentive plan that may be established by the New Board.

1.1.78 "**Net Specified Proceeds**" means the Specified Distribution, net of any (i) government-related liabilities including but not limited to expected taxes, including those calculated or incurred (a) at the Reorganized Debtor corporate level (if the Reorganized Debtor is a corporation or other taxable entity) at the highest marginal tax rate for such applicable entity, and (b) at the limited partner/owner level, in respect of any limited partner or any other person or entity having any economic or ownership interest, whether direct or indirect, in the Reorganized Debtor or in any direct or indirect parent company of the Reorganized Debtor (at the highest marginal tax rate applicable to an individual resident in New York City), as well as any other taxes, obligations, contractual or otherwise, required to be incurred as condition to a Specified Distribution (for example: sums to reinvest in capital assets, to hire workers, to start up operations, or any similar costs); *provided that* the Net Specified Proceeds will be increased or decreased promptly following payment of any such expected corporate level taxes referred to in clause (a) above in this paragraph by the amount, if any, that such expected taxes exceeded or underestimated the actual taxes paid by the Reorganized Debtor, (ii) incentives (including those granted to the Landlord) subject to a cap of $12,500,000.00, and (iii) consulting, accounting, legal fees, and other expenses incurred by the Equity Purchaser and/or the Debtor relating to the pursuit of the Specified Distribution, subject to a cap of $10,000,000.00.

1.1.79 "**New Board**" means, with respect to the Reorganized Debtor, the initial board of directors appointed as of the Effective Date, the members of which shall be determined in accordance with Section 5.9 of the Plan.

IMPAC 6144816V.1

1.1.80    *"New Corporate Governance Documents"* means the Amended Certificate of Incorporation and the Amended By-Laws, which shall be in form and substance reasonably acceptable to the Debtor, the Committee and the Equity Purchaser.

1.1.81    *"New Ownership Interests"* means the new ownership interests in the Reorganized Debtor.

1.1.82    *"Other Priority Claim"* means any Claim against the Debtor entitled to priority in payment as specified in Bankruptcy Code section 507(a), other than an Administrative Expense Claim, the LP DIP Claims, a Fee Claim, or a Priority Tax Claim.

1.1.83    *"Other Secured Claim"* means any secured claim that is not a First DIP Facility Claim, LP Secured DIP Facility Claim, or Secured Tax Claim.  For avoidance of doubt, neither SQN nor WX hold any Other Secured Claims.

1.1.84    *"Person"* shall have the meaning set forth in Bankruptcy Code section 101(41).

1.1.85    *"Petition Date"* means April 17, 2017.

1.1.86    *"Plan"* means this chapter 11 plan proposed by the Debtor, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules, each in form and substance reasonably acceptable to the Equity Purchaser, the Committee, Lion Point, and the Debtor.

1.1.87    *"Plan Administrator"* means the Person or Entity designated by agreement of the Debtor, Lion Point and the Committee in the Plan Supplement and approved by the Bankruptcy Court pursuant to the Confirmation Order to administer Claims and make distributions to holders of Allowed Claims in accordance with the Plan, the Confirmation Order, and the Plan Administrator Agreement.

1.1.88    *"Plan Administrator Account"* means the account that holds Cash owned by the Reorganized Debtor to be funded with: (A) ~~on~~as soon as reasonably practicable after the Effective Date, an amount necessary to fund (i) the Plan Administrator Budget, and (ii) the Cash payment for distributions to be made on account of Allowed Convenience Claims; (B) within thirty (30) days of the receipt of the Specified Distribution, Cash in an amount necessary to fund the Unsecured Creditor Distribution; and (C) as soon as reasonably practicable after an adjustment to the Net Specified Proceeds, Cash in an amount necessary to fund the adjusted Unsecured Creditor Distribution.

1.1.89    *"Plan Administrator Agreement"* means the Plan Administrator Agreement to be dated as of the Effective Date, by and among the Reorganized Debtor and the Plan Administrator specifying the rights, duties and responsibilities of the Plan Administrator under the Plan, substantially in the form included in the Plan Supplement, which form shall be approved by the Committee and the Debtor, in consultation with the Equity Purchaser.

1.1.90    *"Plan Administrator Budget"* means $100,000.00.

1.1.91    "*Plan Distributions*" means the distributions to be made under the Plan to holders of Allowed Claims.

1.1.92    "*Plan Documents*" means the documents, other than the Plan, which shall be acceptable to the Equity Purchaser, the Committee, and the Debtor, to be executed, delivered, assumed, or performed in connection with the consummation of the Plan, including, without limitation, the documents to be included in the Plan Supplement, any and all exhibits to the Plan, the Disclosure Statement, and any and all exhibits to the Disclosure Statement.

1.1.93    "*Plan Supplement*" means the compilation of documents and forms of documents as amended from time to time that constitute Exhibits to the Plan to be filed not less than seven (7) days prior to the earlier of the Voting Deadline and the deadline to object to the Plan, including, without limitation, the following:  (a) a redacted version of the Settlement Agreement; (b) a redacted version of the Equipment Lease and IP License Agreement; (c) the list of documents related to the SQN Prepetition Equipment Loans; (d) a schedule of the Aggregate Administrative/Priority Claims as of December 1, 2018; (e) documents evidencing the New Ownership Interests; (f) the New Corporate Governance Documents; (g) the list of proposed officers and directors of the Reorganized Debtor and, if any such individual is an insider under the Bankruptcy Code, the nature of any compensation to be paid to such individual; (h) the Schedule of Assumed Contracts and Leases and Cure Schedule; (i) the Schedule of Rejected Contracts and Leases; (j) the Plan Administrator Agreement; (k) prospective financial information for the Reorganized Debtor; and (l) additional documents filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement, each of (a) through (l) must be in form and substance acceptable to the Debtor, the Committee and the Equity Purchaser, their acceptance not to be unreasonably withheld.

1.1.94    "*Priority Tax Claim*" means any Claim of a governmental unit (as defined in Bankruptcy Code section 101(27)) of the kind entitled to priority in payment under Bankruptcy Code sections 502(i) or 507(a)(8). For avoidance of any doubt, Secured Tax Claims are not Priority Tax Claims.

1.1.95    "*Professional Person(s)*" means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Case, pursuant to Bankruptcy Code sections 327, 328, or 1103, excluding any ordinary course professionals.

1.1.96 **"*Pro-Rata*"** means when used with reference to a Class 4 or Class 5 distribution hereunder, proportionately so that with respect to a particular Allowed Claim in such Class, the ratio of (w) the amount or value distributed on account of such Claim to (x) the Allowed amount of such Claim is the same as the ratio of (y) the amount or value distributed on account of all Allowed Claims in such Class to (z) the amount of all Allowed Claims in such Class; and when used with reference to the membership interests in the Equity Purchaser, proportionally so that with respect to a particular Allowed LP DIP Claim plus the Cash Purchase Price, (w) the value of membership interests in the Equity Purchaser distributed on account of such Claim or Cash to (x) the amount of such Claim or Cash is the same as the ratio of (y) the value of membership interests distributed on account of all such Claims and Cash to (z) the amount of all such Claims and Cash.

1.1.97 "***Released Parties***" means, collectively, in each case solely in their capacity as such (a) the Debtor in its individual capacity and as debtor in possession, and the Reorganized Debtor; (b) the Committee and each Committee member, (c) Lion Point, (d) the Equity Purchaser; (e) SQN, (f) WX, and (g) with respect to each entity in sections (a) through (f), each of their respective predecessors, successors, and assigns, current shareholders, affiliates, subsidiaries, principals, employees, agents, officers (including the Debtor's Chief Restructuring Officer), directors, managers, trustees, partners, members, professionals, representatives, advisors (including Aurora Management Partners, Inc.), attorneys, financial advisors, accountants, investment bankers, and consultants; *provided, however*, that such attorneys and professional advisors shall only include those that provided services related to this Chapter 11 Case.

1.1.98 "***Releasing Parties***" means, collectively, in each case solely in their capacity as such (a) the Debtor in its individual capacity and as debtor in possession, and the Reorganized Debtor; (b) the Committee and each Committee member, (c) Lion Point, (d) the Equity Purchaser; (e) SQN, (f) WX, and (g) with respect to each entity in sections (a) through (f), each of their respective predecessors, successors, and assigns, current shareholders, affiliates, subsidiaries, principals, employees, agents, officers (including the Debtor's Chief Restructuring Officer), directors, managers, trustees, partners, members, professionals, representatives, advisors (including Aurora Management Partners, Inc.), attorneys, financial advisors, accountants, investment bankers, and consultants to the extent such entities are managed or controlled by the Releasing Parties in clauses (a) through (f); provided, however, that such attorneys and professional advisors shall only include those that provided services related to this Chapter 11 Case.

1.1.99 ~~1.1.98~~ "***Reorganized Debtor***" means the Debtor, as reorganized on the Effective Date in accordance with the Plan.

1.1.100 ~~1.1.99~~ "***Retained Causes of Action***" means any and all legal claims or Causes of Action held by the Debtor or Reorganized Debtor against any party (except those released pursuant to the releases set forth in Article 11 of this Plan).

1.1.101 ~~1.1.100~~ "***Schedule of Assumed Contracts and Leases***" means a schedule of the Executory Contracts and Unexpired Leases to be assumed by the Debtor, reasonably acceptable to the Equity Purchaser and the Committee, pursuant to Bankruptcy Code

sections 365 and 1123 and Section 8.1 of the Plan, which shall be included in the Plan Supplement.

1.1.102 ~~1.1.101~~ "*Schedule of Rejected Contracts and Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor, with the consent of the Equity Purchaser and the Committee, which shall be included in the Plan Supplement.

1.1.103 ~~1.1.102~~ "*Schedules*" means the schedules of assets and liabilities filed in the Chapter 11 Case as amended or supplemented from time to time.

1.1.104 ~~1.1.103~~ "*Second Administrative Expense Claim Bar Date*" means the date that is forty-five (45) days after the Effective Date.

~~1.1.104 "Secured Tax Claims" means the Claims filed by the Gwinnett County Tax Commissioner for prepetition personal property taxes in the amounts of $674,777.53 [Claims Register No. 58] and $109,133.50 [Claims Register No. 59].~~

1.1.105 "*Service Payments*" means one-time payments of $3,500 each to the WARN Act Class Representatives for their service to the WARN Act Class in this Chapter 11 Case and the WARN Act Class Action.

1.1.106 "*Settlement Administrator*" means the party to be retained by WARN Act Class Counsel pursuant to Section 5.21.3 of the Plan.

1.1.107 "*Settlement Agreement*" means the certain settlement agreement dated as of November 20, 2018 among SQN, WX, Lion Point, the Debtor, the Equity Purchaser, and the Committee, as approved by the Bankruptcy Court on November 20, 2018 [D.I. 941] (as amended, restated, supplemented or otherwise modified from time to time).

1.1.108 "*Specified Distribution*" means any distribution of pooled funds collected through the imposition of federal duties pursuant to CSPV AD/CVD 1 and CSPV AD/CVD 2 and any settlement related thereto that is paid to the Debtor or the Reorganized Debtor (or any successors or assigns).

1.1.109 "*SQN*" means any of SQN Asset Servicing, LLC, SQN Venture Partners, LLC, SQN AIF IV, L.P., SQN Gamma, LLC, or any affiliates of any of the foregoing parties.

1.1.110 "*SQN Deficiency Claims*" means the Deficiency Claims of SQN against the Debtor in an aggregate amount of $33,750,000.00, which represents all Claims of SQN against the Debtor, including, without limitation, all Claims under the SQN Prepetition Equipment Loans.

1.1.111 "*SQN Prepetition Equipment Loans*" means collectively, (i) that certain credit agreement, dated as of November 17, 2015, by and among the Debtor, SQN Assets Servicing, LLC, as administrative agent, and SQN Gamma, LLC, Export Development Canada and each other lender party named therein; and (ii) certain smaller facilities by and between the Debtor, SQN Venture Partners, LLC and SQN IV LP, listed in the Plan Supplement.

1.1.112    "*Tax Code*" means the Internal Revenue Code of 1986, as amended.

1.1.113    "*UCC*" means the Uniform Commercial Code as in effect on the Effective Date and from time to time in the State of Delaware.

1.1.114    "*U.S. Trustee*" means the Acting United States Trustee, Region 2.

1.1.115    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

1.1.116    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 and 1123.

1.1.117    "*Unimpaired*" means, with respect to a Class of Claims, a Class of Claims that is not Impaired.

1.1.118    "*Unsecured Creditor Distribution*" means, subject to Section 7.1 of the Plan, the right to a portion of the Net Specified Proceeds received by the Debtor or the Reorganized Debtor (or any successors or assigns), as follows:

(i) 3% of any Net Specified Proceeds below $150,000,000.00;

(ii) 5% of any Net Specified Proceeds from $150,000,000.01 to $175,000,000.00;

(iii)    10% of any Net Specified Proceeds from $175,000,000.01 to $200,000,000.00;

(iv)    15% of any Net Specified Proceeds from $200,000,000.01 to $225,000,000.00;

(v)    50% of any Net Specified Proceeds from $225,000,000.01 to $250,000,000.00;

(vi) 66.5% of any Net Specified Proceeds from $250,000,000.01 to $300,000,000.00; and

(vii)    15% of any Net Specified Proceeds above $300,000,000.01.

1.1.119    "*WARN Act Class*" means the class of Debtor's former employees certified by the Bankruptcy Court pursuant to that certain *Order Approving Stipulation Regarding Class Certification* entered in the WARN Act Class Action.

1.1.120    "*WARN Act Class Action*" means the Adversary Proceeding pending in the Bankruptcy Court styled as *Bill Lam, et al., on behalf of themselves and all others similarly situated, v. Suniva, Inc.*, Adversary Proceeding No. 17-50349-KG.

1.1.121   "*WARN Act Class Claim*" means that certain claim filed by Bill Lam and Jeffrey Behmlander, on behalf of themselves and the WARN Act Class, asserting a priority claim in the amount of $3,084,000 pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a general unsecured claim in the amount of $416,000, and an administrative priority claim pursuant to Section 503(b)(1) of the Bankruptcy Code in an unliquidated amount [Claims Register No. 98].

1.1.122   "*WARN Act Class Claim Initial Consideration*" means, subject to Section 7.1 of the Plan, Cash in the amount of $600,000.00.

1.1.123   "*WARN Act Class Claim Contingent Consideration*" means, subject to Section 7.1 of the Plan, the right to Cash in the amount of $1,847,000.00 if the Net Specified Proceeds received by the Debtor or the Reorganized Debtor (or any successors or assigns) exceeds $150,000,000.00.

1.1.124   "*WARN Act Class Counsel*" means Lankenau & Miller LLP and The Gardner Firm, P.C., the firms appointed by the Bankruptcy Court to represent the WARN Act Class.

1.1.125   "*WARN Act Class Representatives*" means Bill Lam and Jeffrey Behmlander.

1.1.126   "*WARN Act Class Settlement*" means the settlement of the WARN Act Class Claim and WARN Act Class Action described in Section 5.21 of the Plan.

1.1.127   "*WX*" means Wanxiang America Corporation and any of its affiliates.

1.1.128   "*WX Deficiency Claims*" means Deficiency Claims of WX against the Debtor which (i) shall be no more than $10,500,000 and which may be reduced (a) pursuant to the terms of the Settlement Agreement, or (b) as a result of an objection pursuant to Section 6.2 of the Plan, and (ii) which will constitute all of WX's Claims against the Debtor (including, without limitation, all Claims under the WX Prepetition LC Loan Agreement).

1.1.129   "*WX Prepetition LC Loan Agreement*" means that certain Standby Credit Support and Security Agreement, dated as of November 22, 2013, by and between the Debtor and WX (including any and all guarantee, security and other ancillary documentation in respect thereof), as amended, modified or supplemented prior to the Petition Date.

## 1.2     Interpretation; Application of Definitions and Rules of Construction

.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. Any term that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of

IMPAC 6144816V.1

construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan.  The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.  Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

### 1.3    Appendices and Plan Documents

.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if fully set forth in the Plan. The documents contained in the exhibits to the Plan and in the Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours or via the Claims Agent's website at http://cases.gardencitygroup.com/snv/ or may obtain a copy of the Plan Documents by a request to the Claims Agent as follows:

> Suniva, Inc. Case Administration
> c/o Epiq Corporate Restructuring, LLC
> P.O. Box 4422
> Beaverton, OR 97076-4422
> Toll Free: (855) 474-3898

## ARTICLE 2.

## UNCLASSIFIED CLAIMS

### 2.1    Administrative Expense Claims

.

### 2.1.1    *Payment of Administrative Expense Claims*.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, and subject to Section 10.2.7 hereof, no later than thirty (30) days after the later of the Effective Date and the date such Claim becomes an Allowed Claim, in full satisfaction, settlement, and release of, and in exchange for such Claim, each holder of an Allowed Administrative Expense Claim shall receive (a) payment of such Administrative Expense Claim in full in Cash by the Reorganized Debtor or (b) other treatment consistent with Bankruptcy Code section 1129(a)(9); *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor may be paid by the Debtor or Reorganized Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to such liabilities.

IMPAC 6144816V.1

### 2.1.2  *Bar Date for Administrative Expense Claims*.

Requests for payment of Administrative Expense Claims that were not required to be filed and served by the First Administrative Expense Claim Bar Date, other than:

(a)  a 503(b)(9) Claim;

(b)  an Administrative Expense Claim that has become an Allowed Administrative Expense Claim on or before the Effective Date;

(c)  an Administrative Expense Claim for an expense or liability incurred and paid on or before the Effective Date in the ordinary course of business by a Debtor;

(d)  an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtor pursuant to an order of the Bankruptcy Court; or

(e)  an Administrative Expense Claim arising out of the employment by the Debtor of an individual in the ordinary course of business from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;

must be filed with the Bankruptcy Court and served on the Debtor by the Second Administrative Expense Claim Bar Date.  Such request for payment of an Administrative Expense Claim must include, at a minimum (i) the name of the holder of the Administrative Expense Claim; (ii) the asserted amount of the Administrative Expense Claim; (iii) the basis of the Administrative Expense Claim; and (iv) supporting documentation for the Administrative Expense Claim.  For avoidance of doubt, the U.S. Trustee will not be required to file an Administrative Expense Claim by the Second Administrative Expense Claim Bar Date for U.S. Trustee Fees.

Objections, if any, to a timely request for payment of an Administrative Expense Claim must be filed and served on the Reorganized Debtor and the requesting party no later than ninety (90) days after the Effective Date.

**Holders of Administrative Expense Claims not subject to the First Administrative Expense Claim Bar Date that fail to file and serve a request for payment of an Administrative Expense Claim by the Second Administrative Expense Claim Bar Date if such Holder is required to do so pursuant hereto, shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim against the Debtor or its property and such Administrative Expense Claims shall be disallowed in full as of the Effective Date.**

**2.2     DIP Claims.**

2.2.1     *First DIP Facility Claims.*

(a)     The First DIP Facility Claims shall be an Allowed Claim in the amount of $10,570,120.60 plus the amount of interest and fees accrued under the First DIP Credit Documents.

(b)     On the Effective Date, Lion Point will contribute the First DIP Facility Claims to the Equity Purchaser in exchange for a Pro-Rata share in membership interests in the Equity Purchaser on the Effective Date.

(c)     Upon the making of such contribution, all Liens and security interests granted to secure the First DIP Facility Claims shall be terminated and immediately released, and the holder of such Allowed Claim shall execute and deliver to the Reorganized Debtor such instruments of release, satisfaction, and/or assignments (in recordable form) as may be reasonably requested by the Reorganized Debtor.

2.2.2     *LP Secured DIP Facility Claims.*

(a)     The LP Secured DIP Facility Claims shall be an Allowed Claim in the amount of $1,999,605.00 plus the amount of interest and fees accrued under the LP Secured DIP Credit Documents.

(b)     On the Effective Date, Lion Point will contribute the LP Secured DIP Facility Claims to the Equity Purchaser in exchange for a Pro-Rata share in membership interests in the Equity Purchaser on the Effective Date.

(c)     Upon the making of such contribution, all Liens and security interests granted to secure the LP Secured DIP Facility Claims shall be terminated and immediately released, and the holder of such Allowed Claim shall execute and deliver to the Reorganized Debtor such instruments of release, satisfaction, and/or assignments (in recordable form) as may be reasonably requested by the Reorganized Debtor.

2.2.3     *LP Unsecured DIP Facility Claims.*

(a)     The LP Unsecured DIP Facility Claims shall be an Allowed Claim in the amount of $2,172,762.00 plus the amount of interest and fees accrued under the LP Unsecured DIP Credit Documents.

(b)     On the Effective Date, Lion Point will contribute the LP Unsecured DIP Facility Claims to the Equity Purchaser in exchange for a Pro-Rata share in membership interests in the Equity Purchaser on the Effective Date.

(c)     Upon the making of such contribution, the LP Unsecured DIP Facility Claims shall be immediately released, and the Holder of such Allowed

Claim shall execute and deliver to the Reorganized Debtor such instruments of release, satisfaction, and/or assignments (in recordable form) as may be reasonably requested by the Reorganized Debtor.

### 2.2.4 *Result of Contribution of LP DIP Facility Claims and Cash Purchase Price*

The contribution of the LP DIP Facility Claims to the Equity Purchaser in exchange for Pro-Rata shares of membership interests in the Equity Purchaser described in Sections 2.2.1(b), 2.2.2(b), and 2.2.3(b) of the Plan shall result in Lion Point receiving 100% of the membership interests in the Equity Purchaser on account of the Allowed LP DIP Claims plus the Cash Purchase Price.

## 2.4    Fee Claims

.

### 2.4.1    *Payment of Fee Claims*.

All Allowed Fee Claims shall be paid in full in Cash in such amounts as are approved by the Bankruptcy Court no later than thirty (30) days after the later of the Effective Date and the date upon which the order relating to the allowance of any such Fee Claim is entered.  On the Effective Date, the Debtor shall pay to Debtor's counsel Cash in an amount equal to all accrued but unpaid Fee Claims as of the Effective Date (including all amounts reasonably estimated by any Professional Person), which Cash shall be held in an attorney trust account by Debtor's counsel and shall be disbursed solely to the holders of Allowed Fee Claims pursuant to an Order of the Bankruptcy Court with the remainder to be reserved until Fee Claims either have been determined to be Allowed Fee Claims and paid in full or Disallowed Fee Claims by Final Order in which case Debtor's counsel shall return to the Reorganized Debtor the amounts related to the Disallowed Fee Claims.

### 2.4.2    *Time for Filing Fee Claims*.

Any Professional Person seeking allowance of a Fee Claim must file and serve on the Debtor or the Reorganized Debtor, the Committee, Lion Point, the U.S. Trustee and any other Person entitled to notice pursuant to Bankruptcy Rule 2002 an application for final allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than twenty (20) days after the Effective Date; *provided, however,* that the Debtor or Reorganized Debtor, as applicable, shall pay retained professionals of the Debtor or Reorganized Debtor in the ordinary course of business for any work performed on and after the Effective Date in furtherance of the Plan or as authorized hereunder.  Objections to such Fee Claims, if any, must be filed and served no later than forty-five (45) days after the Effective Date.

## 2.5    Priority Tax Claims

.

Except to the extent that the Debtor or the Reorganized Debtor, as applicable, and the holder of an Allowed Priority Tax Claim otherwise agree, no later than thirty (30) days after the later of the Effective Date and the date such Claim becomes an Allowed Claim, in full satisfaction, settlement, and release of, and in exchange for such Claim, each holder of an Allowed Priority Tax Claim shall receive, in the Debtor's discretion, on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) deferred Cash payments following the Effective Date over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the amount of such Allowed Priority Tax Claim with interest at the applicable rate for such Allowed Priority Tax Claim.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Allowed Claim shall be paid in full in Cash in the ordinary course of business in accordance with the terms of any agreement between the applicable Reorganized Debtor and the holder of such Allowed Claim or otherwise in accordance with applicable non-bankruptcy law.

**2.6     U.S. Trustee Fees**

.

As soon as reasonably practicable following the Effective Date, the Reorganized Debtor shall pay, in full and in Cash, any U.S. Trustee Fees due as of the Effective Date.  On and after the Effective Date, the Reorganized Debtor shall pay the applicable U.S. Trustee Fees as such U.S. Trustee Fees become due until such time as a final decree is entered closing the Chapter 11 Case.

## ARTICLE 3.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1     Classification of Claims and Interests**

.

Pursuant to Bankruptcy Code section 1122, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan, to the extent applicable, only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released, withdrawn, or otherwise settled prior to the Effective Date.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Expense Claims, LP DIP Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified.

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote |

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class 3 | ~~Secured Tax Claims~~[Omitted] | ~~Impaired~~N/A | ~~Entitled to Vote~~N/A |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Convenience Claims | Impaired | Entitled to Vote |
| Class 6 | 510 Claims | Impaired | Not Entitled to Vote |
| Class 7 | Interests in Suniva | Impaired | Not Entitled to Vote |

**3.2      Treatment of Claims and Interests**

.

### 3.2.1      *Class 1—Other Priority Claims*.

(a)      *Classification*:  Class 1 consists of the Allowed Other Priority Claims.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, no later than ten (10) Business days after the later of the Effective Date and the date such Claim becomes an Allowed Other Priority Claim, in full satisfaction, settlement, and release of, and in exchange for such Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive payment of such Allowed Claim in full in Cash.

(i)      Subject to Section 5.21 of the Plan which describes the WARN Act Class Settlement, the WARN Act Class will receive the WARN Act Initial Consideration, and the WARN Act Contingent Consideration, in full satisfaction, settlement, and release of, and in exchange for the WARN Act Class Claim and the claims asserted in the WARN Act Class Action.

(c)      *Voting*:  Class 1 is Unimpaired, and the holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 3.2.2      *Class 2—Other Secured Claims*.

(a)      *Classification*: Class 2 consists of the Other Secured Claims, if any.

(b)      *Treatment*:  Except as noted herein, unless otherwise agreed to by the holder of an allowed Secured Claim, on the Effective Date, each holder of an allowed Secured Claim shall receive, at the option of the Debtor, with the consent

21

of the Equity Purchaser, (i) payment by the Reorganized Debtor in full in cash, (ii) reinstatement of the legal, equitable and contractual rights of the holder relating to such Secured Claim, (iii) delivery of the Collateral securing such Secured Claim or (iv) treatment in any other manner so that such Secured Claim shall otherwise be rendered unimpaired.

(i)    The DOE Claim, if Allowed, and any Liens securing it that attach to assets of the Debtor, are unaffected by the Plan and shall be reinstated in full.    The portion of the DOE Claim relating to asserted alleged overbilling by the Debtor under the DOE Awards shall be treated as a Class 4 - General Unsecured Claim to the extent allowed.

(ii)    Notwithstanding any other provision of this Plan, any Liens securing the claim of Kinetic Systems, Inc. [Claims Register Number 36] shall be unaffected by the Plan and Kinetic's legal, equitable, and contractual rights, if any, shall be reinstated with respect to such Liens. All parties' rights to assert or challenge Kinetic's Liens are fully preserved, and any claims purportedly secured by the same shall not be affected by the Plan.

(c)    *Voting*:  Class 2 is Unimpaired and the holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.2.3 *Class 3—Secured Tax Claims*.

(a)    *Classification*: Class 3 consists of the Secured Tax Claims.

(b)    *Treatment*: Pursuant to section 502(b)(3) of the Bankruptcy Code, the Secured Tax Claims are non-recourse claims that are fully secured by statutory, first-priority liens on equipment owned by the Debtor on the Petition Date having an aggregate value in excess of the Secured Tax Claims. These liens shall be unaffected by the Plan and shall be retained by the holder of the Secured Tax Claims notwithstanding the confirmation of the Plan. In full satisfaction and discharge of the Secured Tax Claims, the holder of the Secured Tax Claims shall have recourse to its collateral through the enforcement of its liens pursuant to Georgia law after the Effective Date, and the Debtor shall not restrict the holder's access to its collateral. To the extent, if any, any stay of enforcement of these liens is in effect as of the Effective Date as a consequence of the pendency of the Chapter 11 Case, such stay shall be lifted on the Effective Date in accordance with the terms of the Confirmation Order. (c)    *Voting*: Class 3 is Impaired. Therefore, the holderholders of theAllowed Other Secured TaxClaims isare not entitled to vote to accept or reject the Plan.

IMPAC 6144816V.1

3.2.3    *Class 3—[Omitted].*

3.2.4    ***Class 4—General Unsecured Claims***

(a)    *Classification*:  Class 4 consists of the Allowed General Unsecured Claims.

(b)    *Treatment*:   Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment or elects to be treated as a holder of a Convenience Claim, in accordance with Section 5.20 of the Plan, in full satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive its Pro-Rata share of the Unsecured Creditor Distribution.

(i)    The SQN Deficiency Claims shall be Allowed General Unsecured Claims, unless such holder agrees to reduce such amount; *provided, however*, that holders of SQN Deficiency Claims shall release such claims in the event that the Debtor, Reorganized Debtor or the Equity Purchaser exercises the Purchase Option or the Extension Option (as defined in the Settlement Agreement) (whichever is earlier) in accordance with the terms of the Settlement Agreement, and upon such release, holders of SQN Deficiency Claims (or any subsequent transferee) shall not be entitled to any distribution (whether from the Debtor, the Reorganized Debtor or the Equity Purchaser) to be made on account of SQN Deficiency Claims, or any security, financial instrument or entitlement received as consideration for SQN Deficiency Claims.

(ii)    The WX Deficiency Claim shall be an Allowed General Unsecured Claim, unless such holder agrees to reduce such amount; *provided, however*, that holders of WX Deficiency Claims shall release such claims in the event that the Debtor, Reorganized Debtor or the Equity Purchaser exercises the Purchase Option or the Extension Option (as defined in the Settlement Agreement) (whichever is earlier) in accordance with the terms of the Settlement Agreement, and upon such release, holders of WX Deficiency Claims (or any subsequent transferee) shall not be entitled to any distribution (whether from the Debtor, the Reorganized Debtor or the Equity Purchaser) to be made on account of WX Deficiency Claims, or any security, financial instrument or entitlement received as consideration for WX Deficiency Claims.

(c)    *Voting*:  Class 4 is Impaired.   Therefore, holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 3.2.5 *Class 5—Convenience Claims*

(a) *Classification*:   Class 5 consists of the Allowed Convenience Claims.

(b) *Treatment*:   Except to the extent that a holder of an Allowed Convenience Claim agrees to a less favorable treatment, as soon as reasonably practicable after such Claim is Allowed, each holder of an Allowed Convenience Claim shall receive from the Plan Administrator, in full satisfaction, settlement, release and discharge of, and in exchange for such Convenience Claim, its Pro-Rata share of the Convenience Class Consideration.

(c) *Voting*: Class 5 is Impaired.   Therefore, holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

### 3.2.6 *Class 6—510 Claims*

(a) *Classification*: Class 6 consists of the 510 Claims, if any, against the Debtor.

(b) *Treatment*: There shall be no distribution to the holders of 510 Claims on account of such Claims.

(c) *Voting*: Class 6 is Impaired, and the holders of 510 Claims are conclusively deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).   Therefore, holders of 510 Claims are not entitled to vote to accept or reject the Plan.

### 3.2.7 *Class 7—Interests*

(a) *Classification*: Class 7 consists of all Interests.

(b) *Treatment*:   On the Effective Date, all Interests shall be deemed canceled and extinguished and shall be of no further force and effect, whether surrendered for cancelation or otherwise, and there shall be no distribution to the holders of Interests on account of such Interests.

(c) *Voting*: Class 7 is Impaired, and the holders of Class 7 Interests are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).   Therefore, holders of Interests are not entitled to vote to accept or reject the Plan.

# ARTICLE 4.

ARTICLE 4.

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

### 4.1    Classes Entitled To Vote

.

Classes 3, 4,4 and 5 are Impaired and are entitled to vote to accept or reject the Plan.  By operation of law, Classes 1 and 2 are Unimpaired and are deemed to have accepted the Plan and, therefore, not entitled to vote.  By operation of law, Classes 6 and 7 are deemed to have rejected the Plan and not entitled to vote.

### 4.2    Acceptance by Impaired Classes

.

An Impaired Class of Claims shall have accepted the Plan if, not counting the vote of any holder designated under Bankruptcy Code section 1126(e), (a) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### 4.3    Elimination of Vacant Classes

.

To the extent applicable, any Class that does not contain any Allowed Claims, Allowed Interests, or Claims or Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018 as of the date of commencement of the Confirmation Hearing shall be deemed to have been eliminated from the Plan for purposes of voting to accept or reject the Plan and for determining whether such Class has accepted or rejected the Plan pursuant to Bankruptcy Code section 1129(a)(8).

### 4.4    Confirmation Pursuant to Bankruptcy Code Section 1129(b) (Cramdown

).

The Debtor will request confirmation of the Plan under Bankruptcy Code section 1129(b) with respect to any Classes that vote to reject the Plan as well as those Classes that are deemed to have rejected the Plan.

## ARTICLE 5.

## MEANS FOR IMPLEMENTATION

### 5.1    Prior Compromise and Settlement of Disputes

The Plan reflects the outcome of a Settlement Agreement approved by the Court on November 20, 2018 [D.I. 941].  For the avoidance of doubt, the Settlement Agreement and Equipment Lease and License Agreement shall remain in effect pursuant to itstheir terms and isare binding on the Reorganized Debtor and the parties thereto, and, for avoidance of doubt, are not subject to rejection under article 8 of the Plan and are therefore not rejected hereunder.  The Settlement Agreement and the Equipment Lease and IP License Agreement are attached to the Plan Supplement and incorporated herein as a part of the Plan as if fully set forth in the Plan, and nothing in the Plan shall alter any party's rights under the Settlement Agreement or the Equipment Lease and IP License Agreement.

### 5.2    Issuance of New Ownership Interests

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor shall issue all securities, notes, instruments, warrants, certificates, and other documents required to be issued under the Plan.  It is the intent of the parties that any securities as defined in section 2(a)(1) of the Securities Act of 1933 issued under any Plan, except with respect to any entity that is an underwriter, shall be exempt from registration under U.S. state and federal securities laws pursuant to section 1145 of the Bankruptcy Code or another exemption from registration, and the Reorganized Debtor will use its commercially reasonable best efforts to utilize (i) section 1145 of the Bankruptcy Code or (ii) to the extent that such exemption is unavailable, any other available exemptions from registration, as applicable.

On the Effective Date, and without any further corporate action, the Reorganized Debtor shall issue 100% of the New Ownership Interests to the Equity Purchaser in exchange for the Equity Purchase Price which shall be paid to the Debtor on the Effective Date.  The documents for and the terms relating to the New Ownership Interests shall be in a form and substance acceptable to the Debtor, the Equity Purchaser and the Committee.

The New Ownership Interests shall be authorized under the Amended Certificate of Incorporation of the Reorganized Debtor, and shall be fully paid and non-assessable.

### 5.3    Cancellation of Securities and Agreements

On the Effective Date, except as otherwise specifically provided for in the Plan, (a) the obligations of the Debtor under the documents related to the LP DIP Claims and any certificate, share, note, bond, indenture, purchase right, option, warrant, mortgages, deeds of trust, liens, security interests or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically reinstated pursuant to the Plan), shall be cancelled as to the Debtor, and the Reorganized Debtor shall not have any continuing

obligations thereunder, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor and its successors and assigns, and (b) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated or assumed pursuant to the Plan) shall be released and discharged.  As of the Effective Date, the Reorganized Debtor will be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, mortgage releases or such other forms as may be necessary or appropriate to implement the provisions of Article 5 of the Plan.

### 5.4    Private Company

On the Effective Date, the Reorganized Debtor shall be a private, non-reporting company, and the New Ownership Interests shall not be registered or listed on any national securities exchange.

### 5.5    Section 1145 Exemption

Pursuant to Bankruptcy Code section 1145, the offering, issuance, and distribution of the New Ownership Interests contemplated by the Plan shall be exempt from, among other things, the registration requirements of Securities Act section 5 and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities.  Accordingly, the New Ownership Interests contemplated by the Plan will be freely tradable in the United States of America by the recipients thereof subject to (a) the provisions of Bankruptcy Code section 1145(b)(1) relating to the definition of an underwriter in Securities Act section 2(a)(11); (b) compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of the New Ownership Interests; (c) applicable regulatory approval; and (d) the Amended Certificate of Incorporation and the Amended By-Laws.

### 5.6    Sources of Consideration for Plan Distributions

All Cash necessary for the Reorganized Debtor to fund distributions to holders of Allowed Claims in accordance with article 3 of the Plan shall be obtained from existing Cash at the Reorganized Debtor, including the Specified Distribution, if any, as applicable, and Cash generated by the sale or liquidation of *de minimis* assets.

### 5.7    Corporate Existence

Except as otherwise provided herein, in the New Corporate Governance Documents, or elsewhere in the Plan Supplement, the Reorganized Debtor shall exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which the Reorganized

Debtor is incorporated or formed.  The New Corporate Governance Documents shall be substantially in the form contained in the Plan Supplement, and shall be in a form and substance reasonably acceptable to the Debtor, Equity Purchaser and Committee.

### 5.8    Amended Certificate of Incorporation and Amended By-Laws

On or immediately before the Effective Date, the Reorganized Debtor will file its Amended Certificate of Incorporation with the applicable Secretary of State or other applicable authorities in its state of incorporation in accordance with the corporate laws of such state of incorporation.  Pursuant to Bankruptcy Code section 1123(a)(6), the Amended Certificate of Incorporation with respect to the Reorganized Debtor will prohibit the issuance of nonvoting equity securities.  After the Effective Date, the Reorganized Debtor may amend and restate the Amended Certificate of Incorporation and Amended By-laws and other constituent documents as permitted by the laws of the Reorganized Debtor's state of incorporation, the Amended Certificate of Incorporation and Amended By-Laws.

### 5.9    Reorganized Debtor's Board of Directors

On the Effective Date, the New Board shall be composed of three (3) members designated by the Equity Purchaser.  Members of the New Board shall be identified in the Plan Supplement.  On the Effective Date, the terms of the current members of the board of directors of the Debtor shall expire.  On the Effective Date, the Committee shall designate one additional non-voting member to the New Board in an observer capacity for a single two-year term.

### 5.10    Reorganized Debtor's Officers

As of the Effective Date, the term of the current officers of the Debtor shall expire and the Chief Restructuring Officer shall be discharged of his duties to the Debtor and under the Aurora Retention Order.  The other officers of the Reorganized Debtor shall be determined by the New Board.  Such officers shall serve in accordance with applicable nonbankruptcy law.  The identity and affiliations of the officers of the Reorganized Debtor and, if any such individual is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such individual shall be disclosed in the Plan Supplement.

### 5.11    Vesting of Assets

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated therein, on the Effective Date, any and all property in the Estate and all Retained Causes of Action shall vest in the Reorganized Debtor free and clear of all Liens, Claims, interests, charges, or other encumbrances, and as provided hereinafter, that on the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall irrevocably and absolutely release all Avoidance Actions.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 5.12    Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (1) selection of the directors and officers of the Reorganized Debtor, (2) the distribution of the New Ownership Interests, (3) any actions required to be taken under the Settlement Agreement, and (4) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificate of incorporation, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the names of and on behalf of the Reorganized Debtor, including the New Ownership Interests, and any and all agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under nonbankruptcy law.

### 5.13    Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor, and its managers, officers and members of the New Board are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the New Ownership Interests, and the Settlement Agreement, all without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 5.14    Final Settlement of Claims and Interests

Subject to article 7, all distributions made to holders of Allowed Claims and Interests in any Class are intended to be and shall be final and indefeasible.

### 5.15    Section 1146 Exemption from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any entity pursuant to, in contemplation of, or in connection with this Plan or the Settlement Agreement or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of

transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.16    D&O Liability Insurance Policies and Indemnification Provisions

Notwithstanding anything to the contrary, as of the Effective Date, all Indemnification Provisions belonging or owed to directors, officers and employees of the Debtor except for Indemnification Provisions under the Aurora Retention Order shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Bankruptcy Code section 365 under the Plan.

Neither the Debtor, nor the Reorganized Debtor (after the Effective Date), shall let lapse, terminate, or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including tail coverage liability insurance) in effect as of the Petition Date, solely as it relates to covered claims under such policy that arose prior to the Petition Date.

### 5.17    Preservation of Rights and Causes of Action

In accordance with Bankruptcy Code section 1123(b), and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases provided by Section 11.5.1 and 11.5.2 of the Plan), the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, the Plan Supplement or the Retained Causes of Action to any Causes of Action against them as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Retained Causes of Action against them.

### 5.18    Management Incentive Plan

The New Board may, in its sole discretion, adopt a Management Incentive Plan following the Effective Date.  The New Board shall, in its sole discretion, determine any allocations with respect to awards under the Management Incentive Plan.

### 5.19    ~~Comprehensive Settlement of Claims and Controversies~~

.

~~Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtor or the Plan Administrator, as applicable, may compromise and settle Claims against, and Interests in, the Debtor and its Estate and the Reorganized Debtor may compromise and settle Retained Causes of Action.~~

### 5.20    Unsecured Creditor Distribution

.

As of the Effective Date, Holders of Allowed General Unsecured Claims shall be vested with the indefeasible right to receive their Pro-Rata share of the Unsecured Creditor Distribution; *provided, however*, that the SQN Deficiency Claims and the WX Deficiency Claims shall be subject to the limitations set forth in the Settlement Agreement and Section ~~3.2.3~~3.2.4(b). No later than thirty (30) days after receipt of the Specified Distribution, the Reorganized Debtor shall fund the Plan Administrator Account with sufficient funds to satisfy the Unsecured Creditor Distribution, which amounts shall be further distributed by the Plan Administrator to Holders of Allowed General Unsecured Claims in accordance with the Plan and the Plan Administrator Agreement within thirty (30) days of receipt into the Plan Administrator Account, *provided* that the Reorganized Debtor shall deposit any additional amounts attributable to the Unsecured Creditor Distribution as a result of an adjustment to the Net Specified Proceeds in the Plan Administrator Account as soon as reasonably practicable, for further distribution by the Plan Administrator to Holders of General Unsecured Claims in accordance with the Plan and the Plan Administrator Agreement.

### 5.21    WARN Act Class Settlement

.

This Plan implements this WARN Act Class Settlement.  The WARN Act Class Settlement reflects the arms' length, good faith negotiations among the parties to such litigation, taking into account the costs of such litigation to the respective parties, the limited funds available, and the assessment by each party of the likelihood of success on the merits.  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code and consistent with section 1129 of the Bankruptcy Code, the Plan shall constitute a motion for approval of, and the Confirmation Order shall constitute Bankruptcy Court approval of, the WARN Act Class Settlement.

The WARN Act Class Settlement shall be effectuated in accordance with the following terms if the WARN Act Class Settlement is approved by the Bankruptcy Court:

5.21.1 No later than ten (10) Business days after the Effective Date, the Reorganized Debtor shall pay the WARN Act Class Claim Initial Consideration to WARN Act Class Counsel via wire transfer, according to instructions to be supplied by WARN Act Class Counsel.

5.21.2 As of the Effective Date, members of the WARN Act Class shall be vested with the indefeasible right to receive their Pro-Rata share of the WARN Act Class Claim Contingent Consideration. If conditions for payment of the WARN Act Class Claim Contingent Consideration are satisfied, then, no later than thirty (30) days after receipt by the Reorganized Debtor of the Specified Distribution, the Reorganized Debtor shall pay WARN Act Class Counsel the WARN Act Class Claim Contingent Consideration.

5.21.3 Payments to WARN Act Class Counsel of the WARN Act Class Claim Initial Consideration and the WARN Act Class Claim Contingent Consideration (if conditions for payment of the WARN Act Class Claim Contingent Consideration are met) shall satisfy any obligation the Debtor or Reorganized Debtor has on account of the WARN Act Class Claim or WARN Act Class Action, including any costs or attorneys' fees sought by the WARN Act Class and/or the WARN Act Class Counsel. WARN Act Class Counsel shall retain a Settlement Administrator who shall be responsible for preparing and mailing Pro-Rata distributions of the WARN Act Class Initial Consideration and the WARN Act Class Claim Contingent Consideration, along with IRS 1099 forms, as soon as reasonably possible to each member of the WARN Act Class net of: (a) the Service Payments, from which no fees shall be withheld; and (b) WARN Act Class Counsel's fees, which shall be 33 1/3% of any distribution received (minus the one-time Service Payments) under the WARN Act Class Settlement, plus WARN Act Class Counsel's out-of-pocket expenses, which shall include the fees and costs of the Settlement Administrator, which fees and costs are projected to be no more than $15,000.

5.21.4 Within fifteen (15) Business Days of the Effective Date of the Plan, the WARN Act Class representatives and the Reorganized Debtor shall execute and file a dismissal with prejudice of the WARN Act Class Action.

5.21.5 The WARN Act Class Claim shall be Allowed as an Other Priority Claim in the amount of $2,447,000.00 pursuant to Section 507(a)(4) of the Bankruptcy Code without the need for such WARN Act Class Counsel or any member of the WARN Act Class to take any further action to seek allowance of such claim. The Allowed WARN Act Class Claim shall be entitled only to the WARN Act Class Claim Initial Consideration and the WARN Act Class Claim Contingent Consideration (if any) as set forth in this Section 5.21 of the Plan. The allowance of the WARN Act Class Claim shall serve to nullify and void any and all claims previously filed by members of the WARN Act Class on account of any purported obligations of the Debtor under the WARN Act. The Debtor or Reorganized Debtor and the Claims Agent shall be authorized to take all necessary actions to expunge from the claims register any and all such voided and nullified claims.

# ARTICLE 6.

# PROCEDURES FOR RESOLVING CLAIMS

### 6.1    Allowance of Claims

.

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses, including rights of setoff that the Debtor had with respect to any Claim. ~~Except as expressly provided in the Plan or in any order entered in the Debtor's Chapter 11 Case before the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed an Allowed Claim under the Plan or the Bankruptcy Code or a Final Order has been entered allowing such Claim, including, without limitation, the Confirmation Order.~~

### 6.2    Objections to Claims

.

The Debtor or the Reorganized Debtor, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan, *provided, however*, that after the Effective Date the Plan Administrator solely shall have authority to file, settle, compromise, withdraw or litigate to judgment any objection to Convenience Claims or General Unsecured Claims in accordance with the terms of the Plan Administrator  Agreement; *provided further, however*, that the Reorganized Debtor shall provide notice prior to seeking the reclassification of any Claim to a General Unsecured Claim and the Plan Administrator shall have standing to object to such reclassification.  Any objections to Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of (a) the date that is 180 days after the Effective Date, (b) such other date as may be fixed by the Bankruptcy Court or (c) by consent of the applicable parties; *provided, however*, that the applicable deadline may be extended by presentment of an order to the Bankruptcy Court by the Reorganized Debtor or the Plan Administrator, as applicable, on notice but without the need for a hearing.  ~~Any Claims or request for payment filed after the applicable Bar Date shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Reorganized Debtor, unless the Person seeking to file such untimely Claim has received the Bankruptcy Court's authorization to do so.~~

### 6.3    Estimation of Claims

6.3.1    Consistent with rights otherwise granted herein, the Reorganized Debtor or Plan Administrator, as applicable, may request that the Bankruptcy Court estimate any Claim, pursuant to Bankruptcy Code section 502(c), ~~regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection,~~ and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time (including during the pendency of any appeal with respect to the allowance or disallowance of such Claims).

6.3.2    In the event that the Bankruptcy Court estimates any disputed, contingent, or unliquidated Claim, that estimated amount shall constitute either the amount of such Allowed Claim or a maximum limitation on the amount of such Allowed Claim.  If the estimated amount constitutes a maximum limitation on such Allowed Claim, the Debtor, Reorganized Debtor or Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Plan Distribution on account of such Claim.  ~~Notwithstanding Bankruptcy Code section 502(j), in no event shall any holder of a Claim that has been estimated pursuant to Bankruptcy Code section 502(c) or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated.~~  All of the Claims objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, resolved, or withdrawn by any mechanism approved by the Bankruptcy Court.

### 6.4    Claims Paid or Payable by Third Parties.

To the extent the holder of a Claim receives payment on account of such Claim from a party that is not the Debtor, Reorganized Debtor or Plan Administrator, the Reorganized Debtor or Plan Administrator, as applicable, shall reduce the Claim (in full or to the extent of payment by the third party), and such Claim shall be disallowed to the extent of payment from such third party without an objection to such Claim having to be filed and without further notice to, action, order or approval of the Bankruptcy Court.  Further, to the extent a holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not a Debtor, Reorganized Debtor or Plan Administrator, on account of such Claim, such holder shall, within ten (10) Business Days of receipt thereof, repay or return the distribution to the Reorganized Debtor or Plan Administrator, as applicable, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Plan Distribution.  The failure of such holder to timely repay or return such Plan Distribution shall result in such holder owing the Reorganized Debtor annualized interest at the federal judgment rate on such amount owed for each Business Day after the fourteen-day (14-day) grace period specified above until such amount is repaid.

### 6.6    Disputed Claim Reserve.

~~On or before~~After the Effective Date, the Plan Administrator may establish a reserve for Disputed Convenience Claims, consisting of the Convenience Class Consideration in an amount as reasonably determined by the Plan Administrator.  The Convenience Class Consideration held in the reserve shall be distributable to Holders of Disputed Convenience Class Claims that are ultimately determined to be Allowed Convenience Class Claims as such amounts would have been distributable had the Disputed Convenience Class Claim been an Allowed Claims as of the Effective Date.

**6.7    Distributions After Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  After the Effective Date, distributions made to or rights received by Holders of Disputed Claims which later become Allowed Claims shall be deemed to have been made or have vested on the Effective Date.  Except as otherwise provided in the Plan or by Final Order of the Bankruptcy Court, Plan Distributions on account of a Claim that becomes an Allowed Claim after the Effective Date shall be made by the Reorganized Debtor or Plan Administrator, as applicable, no later than thirty (30) days after the Claim becomes an Allowed Claim.

**6.8    Insured Claims.**

6.8.1    Holders of Claims that are covered by the Debtor's insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Debtor or Reorganized Debtor, as applicable, shall have no obligation to pay any amounts in respect of pre-petition deductibles. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction or settled in accordance with the applicable insurer's reasonable business judgment in consultation with the Reorganized Debtor), then, immediately upon such insurers' agreement, the Reorganized Debtor or Plan Administrator, as applicable, may direct the Voting and Claims Agent to expunge such Claim from the Claims Register to the extent of any agreed-upon satisfaction without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

6.8.2    Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Documents, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or that grants an injunction or release, including, but not limited to, the injunctions set forth in article 11 of the Plan): (i) on the Effective Date, the Reorganized Debtor shall be deemed to have assumed all unexpired insurance policies issued at any time to the Debtor, or its affiliates or predecessors of any of the foregoing and all agreements related thereto; (ii) nothing in the Disclosure Statement, the Plan, the Plan Documents, the Plan Supplement or the Confirmation Order alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) such insurance policies, except that as of the Effective Date, the Reorganized Debtor shall become and remain liable for all of the Debtor's obligations and liabilities thereunder regardless of whether such obligations and liabilities arise before or after the Effective Date, *provided, however*, the Reorganized Debtor will not be liable for indemnification obligations under any D&O insurance policies; (iii) nothing in the Disclosure Statement, the Plan, the Plan Documents, Plan Supplement, the Confirmation Order, any Pre-petition or administrative claim bar date order (or notice) or claim objection order alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by the insurance policies and their right to seek payment or reimbursement from the Debtor (or after the Effective Date, the Reorganized Debtor) or draw on any Collateral or security therefor; (iv) insurers and third party administrators shall

not need to nor be required to file or serve a Cure Dispute or a request, application, claim, proof of claim or motion for payment and shall not be subject to the any Bar Date or similar deadline governing Cure Amounts or Claims; and (v) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Section 11.4 of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit:  (A) claimants with valid claims covered by any of the insurance policies to proceed with their claims; (B) insurers and/or third party administrators to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (1) all insured claims, and (2) all costs in relation to each of the foregoing; (C) the insurers and/or third party administrators to draw against any or all of any Collateral or security provided by or on behalf of the Debtor (or the Reorganized Debtor, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtor (and the Reorganized Debtor, as applicable) to the applicable insurers and/or third party administrators and/or apply such proceeds to the obligations of the Debtor (and the Reorganized Debtor, as applicable) under the applicable insurance policies, in such order as the applicable insurers and/or third party administrators may determine, but solely in accordance with the terms of such Insurance Contracts; and (D) the insurers and/or third party administrators to (1) cancel any policies under the insurance policies, and (2) take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Insurance Contracts.  For the avoidance of doubt, no holder of an insured claim that did not file a proof of claim prior to the applicable Bar Date (unless otherwise subject to an exception in the order governing Bar Dates) shall be deemed to have an Allowed Claim arising from this provision.

## ARTICLE 7.

## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1     Satisfaction of Claims

.

Unless otherwise provided in the Plan, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete satisfaction, settlement, and release of such Allowed Claims.  Holders of Allowed Claims may assert such Claims against the Debtor; *provided, however,* that in no case shall the aggregate value (as of the Effective Date) of all rights or property received or retained under the Plan (or from third parties) by a holder of an Allowed Claim exceed 100% of such holder's Allowed Claim.

### 7.2     No Partial Distributions on Disputed Claims

.

Notwithstanding any other provision herein, no partial payments and no partial Plan Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

### 7.3 Delivery of Plan Distributions

.

#### 7.4.1 *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the Claims Register shall be closed and there shall be no further changes in the record holders of any Claims or Interests. The Reorganized Debtor or the Plan Administrator, as applicable, shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of records as of the close of business on the Distribution Record Date. Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and assignment of the Debtor's Executory Contracts and Unexpired Leases, neither the Debtor nor the Reorganized Debtor shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

#### 7.4.2 *Address for Plan Distributions*.

Except as otherwise noted in Section 5.21, Plan Distributions to holders of Allowed Claims shall be made by the Reorganized Debtor or the Plan Administrator, as applicable at (a) the addresses of such holders on the books and records of the Debtor or its agent; or (b) the addresses in any written notice of address change delivered to the Debtor, Reorganized Debtor, or the Plan Administrator, as applicable, including any addresses on any filed proofs of Claim or transfers of Claim filed with the Bankruptcy Court.

#### 7.4.3 *Distributions on Account of Claims Administered by an Agent; Delivery of Plan Distributions to Agent*.

In the case of holders of Claims whose Claims are governed by an agreement and administered by an agent, the agent shall be deemed to be the holder of such Claims for purposes of Plan Distributions to be made hereunder.  The Reorganized Debtor or the Plan Administrator, as applicable, shall make all distributions on account of such Claims to the applicable agents. Each agent shall, at its option, hold or direct such Plan Distributions for the holders of such Allowed Claims in accordance with the Plan; *provided, however*, that each agent shall retain all rights under its respective agreement in connection with delivery of such Plan Distributions; *provided, further*, that the Reorganized Debtor's or the Plan Administrator's, as applicable, obligations to make Plan Distributions pursuant to the Plan shall be deemed satisfied upon delivery of Plan Distributions to each agent.  The agents shall not be required to give any bond, surety, or other security for the performance of their duties with respect to such distributions.

#### 7.4.4 *Setoffs.*

In the event that the value of the Debtor's claim, right, or Causes of Action against a particular claimant is undisputed, resolved by settlement, or has been adjudicated by Final Order of any court, the Reorganized Debtor or Plan Administrator, as applicable, may set off such

undisputed, resolved, or adjudicated amount against any Plan Distributions that would otherwise become due to such claimant. Neither the failure to effectuate such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any claims, rights, or Retained Causes of Action that the Debtor or the Reorganized Debtor may possess against such claimant.

### 7.4.5    *De Minimis and Fractional Plan Distributions*.

Notwithstanding anything herein to the contrary, the Reorganized Debtor or the Plan Administrator, as applicable, shall not be required to make on account of any Allowed Claim (a) partial Plan Distributions or payments of fractions of dollars or (b) any Plan Distribution if the amount to be distributed is less than $25.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions.

### 7.4.6    *Undeliverable Plan Distributions*.

If any Plan Distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor or Plan Administrator, as applicable, has been notified of the then-current address of such holder, at which time such Plan Distribution shall be made as soon as reasonably practicable thereafter without interest, dividends, or accruals of any kind; *provided, however*, that such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) and forfeited at the expiration of the later of six (6) months from (i) the Effective Date and (ii) the Distribution Date after such holder's Claim first becomes an Allowed Claim. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor (notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) for redistribution in the same Class in accordance with the terms of the Plan, if applicable, and the Claim of any holder to such property or interest in property shall be forever barred, estopped, and enjoined from asserting any Claim against the Debtor, the Estate, the Reorganized Debtor or the Plan Administrator. Nothing contained herein shall require the Reorganized Debtor or Plan Administrator, as applicable, to attempt to locate any holder of an Allowed Claim.

### 7.4.7    *Failure to Present Checks*.

Any check issued by the Reorganized Debtor or the Plan Administrator, as applicable, on account of an Allowed Claim shall be null and void if not negotiated within 120 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Reorganized Debtor or Plan Administrator, as applicable, by the holder of the relevant Allowed Claim with respect to which such check originally was issued. If any holder of an Allowed Claim holding an un-negotiated check does not request reissuance of that check within six (6) months after the date the check was mailed or otherwise delivered to the holder, that Allowed Claim shall be released and the holder thereof shall be forever barred, estopped, and enjoined from asserting any Claim against the Debtor, Reorganized Debtor or Plan Administrator, as applicable. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtor free of any Claims of such holder with respect thereto, and if applicable, shall be redistributed to the other holders of Allowed Claims in the same Class in accordance with the Plan.

IMPAC 6144816V.1

**7.5    No Post-Petition Interest on Claims.**

Other than as specifically provided in the Plan, the Confirmation Order, the Cash Collateral Order, or other order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any pre-petition Claim, and no holder of a pre-petition Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**7.6    Withholding and Reporting Requirements.**

In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such distribution. The Reorganized Debtor or Plan Administrator, as applicable, has the right, but not the obligation, not to make a distribution until such Holder has made arrangements satisfactory to the Reorganized Debtor for payment of any such tax obligations. The Reorganized Debtor or Plan Administrator, as applicable, may require, as a condition to the receipt of a distribution, that the Holder of an Allowed Claim complete the appropriate Form W-8 or Form W-9, as applicable to each Holder. If such Holder fails to comply with such request within six (6) months, such distribution shall be deemed an unclaimed distribution, shall revert to the Reorganized Debtor and such Holder shall be forever barred from asserting any such Allowed Claim against the Debtor or its Assets, the Reorganized Debtor or its Assets, the Plan Administrator or any other Assets transferred pursuant to the Plan, and if applicable, any such unclaimed distribution shall be redistributed to the other holders of Allowed Claims in the same Class in accordance with the Plan.

## ARTICLE 8.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    General Treatment.**

Effective as of the Effective Date, all Executory Contracts and Unexpired Leases are hereby rejected, except for an Executory Contract or Unexpired Lease that (i) has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (ii) is specifically designated as an Executory Contract or Unexpired Lease to be assumed on the Schedule of Assumed Contracts and Leases or is otherwise expressly assumed pursuant to the Plan, (iii) is the subject of a separate assumption motion filed by the Debtor or Reorganized Debtor (in either case with the consent of the Equity Purchaser) under section 365 of the Bankruptcy Code, or (iv) is the subject of a pending objection regarding a Cure Dispute.

## 8.2    Determination of Cure Disputes

8.2.1    The Debtor shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts and Leases and shall serve, not less than twenty (20) days prior to the commencement of the Confirmation Hearing, a notice on parties to Executory Contracts and Unexpired Leases to be assumed reflecting the Debtor's intention to assume the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  The proposed Cure Amount for any Executory Contract or Unexpired Lease not listed on the schedule shall be $0.00.  The Debtor shall also file, as part of the Plan Supplement, a Schedule of Rejected Contracts and Leases and shall serve, not less than twenty (20) days prior to the commencement of the Confirmation Hearing, a notice on parties to Executory Contracts and Unexpired Leases to be rejected reflecting the Debtor's intention to reject the contract or lease in connection with this Plan.  The failure of the Debtor to list a contract or lease as rejected on a Schedule of Rejected Contracts and Leases shall not constitute an assumption of such contact or lease.

8.2.2    To the extent that a Cure Dispute is asserted in an objection filed not less than ten (10) days prior to the commencement of the Confirmation Hearing, and properly served on the Debtor, such Cure Dispute shall be scheduled for a hearing by the Bankruptcy Court. Following resolution of a Cure Dispute by Final Order of the Bankruptcy Court, the applicable Executory Contract or Unexpired Lease shall be deemed assumed effective as of the Effective Date, provided that the Debtor or the Reorganized Debtor, reserves the right to reject any Executory Contract or Unexpired Lease following entry of a Final Order of the Bankruptcy Court resolving the applicable Cure Dispute by filing a notice indicating such rejection within ten (10) Business Days of the entry of such Final Order.

8.2.3    To the extent that an objection is not timely filed and properly served on the Debtor with respect to a Cure Dispute, then the counterparty to the applicable Executory Contract or Unexpired Lease shall be deemed to have assented to (a) the Cure Amount proposed by the Debtor and (b) the assumption of such contract or lease, notwithstanding any provision thereof that (i) prohibits, restricts or conditions the transfer or assignment of such contract or lease, or (ii) terminates or permits the termination of a contract as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or a change in the ownership or control as contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtor or terminating or modifying such contract on account of transactions contemplated by the Plan.

## 8.3    Payments Related to Assumption of Contracts and Leases.

8.3.1    Subject to resolution of any Cure Dispute, any monetary amounts by which any Executory Contract and Unexpired Lease to be assumed hereunder is in default shall be satisfied pursuant to Bankruptcy Code section 365(b)(1), by payment of the Cure Amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contract or Unexpired Lease may agree.

8.3.2    Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any

40

Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Any proofs of claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court or any other entity.

### 8.4    Rejection.

8.4.1    All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be filed with the Claims Agent according to the procedures established for the filing of proofs of claim or before the later of (i) the applicable Bar Date, (ii) thirty (30) days after the entry of the order approving the rejection of such Executory Contract or Unexpired Lease, and (iii) if such Executory Contract is rejected pursuant to the Plan, thirty (30) days after the Effective Date.  All Claims arising from the rejection of Executory Contracts or Unexpired Leases that are evidenced by a timely filed proof of claim will be treated as a Class 4 Claim, and any objections to such Claims shall be served and filed on or before the later of (a) the date that is 180 days after the Effective Date, or (b) such other deadline set by the Bankruptcy Court or by consent of the applicable parties.  Upon receipt of the Plan Distribution provided in Section 7.3 of the Plan, all such Claims shall be satisfied, settled, and released as of the Effective Date, and shall not be enforceable against the Debtor, the Estates, the Reorganized Debtor, or their respective properties or interests in property.

8.4.2    Any Person that is required to file a proof of claim arising from the rejection of an Executory Contract or Unexpired Lease that fails timely to do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtor, the Estate, the Reorganized Debtor, or its respective properties or interests in property, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

### 8.5    Compensation and Benefits.

8.5.1    All broad-based employee benefit plans, policies and programs of the Debtor applicable to its respective employees, retirees, and non-employee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, and life and accidental death and dismemberment insurance plans, are deemed to be Executory Contracts and shall be treated in accordance with this Article 8.

8.5.2    Notwithstanding anything in this Article 8 to the contrary, all employment agreements and all severance, retention, incentive bonus, change in control bonus, and all other incentive compensation plans, policies and agreements of the Debtor applicable to its respective employees, retirees and non-employee directors are deemed to be Executory Contracts and shall be automatically rejected in accordance with the provisions of Bankruptcy Code section 365 and 1123 as of the Effective Date, unless any such Executory Contract is listed on the Schedule of Assumed Contracts and Leases.  However, nothing in this Article 8 shall be

deemed to reject indemnification provisions permitted under the Aurora Retention Order, which shall become obligations of the Reorganized Debtor.

## ARTICLE 9.

## PLAN ADMINISTRATOR

### 9.1    Generally.

On the Effective Date, the Plan Administrator shall be appointed by the Debtor with the consent of Lion Point and the Committee, and take effect pursuant to the terms of the Plan Administrator Agreement, which shall be subject to the approval of the Committee and in consultation with the Equity Purchaser.

### 9.2    Purpose.

9.2.1    The Plan Administrator shall, in accordance with the Plan Administrator Agreement, be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) object to and to otherwise resolve and settle Convenience Claims and General Unsecured Claims as appropriate; and (iii) make distributions to holders of Allowed Convenience Claims and Allowed General Unsecured Claims as provided for in the Plan; (iv) enforce the rights of Holders of Allowed General Unsecured Claims to receive the Unsecured Creditor Distribution in accordance with the Plan (including any additional amounts attributable to the Unsecured Creditor Distribution as a result of an adjustment to Net Specified Proceeds); (v) employ professionals to represent it with respect to its responsibilities; and (vi) exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

### 9.3    Compensation.

All compensation for the Plan Administrator will be paid from the Plan Administrator Account, and except as otherwise provided in the Plan Administrator Agreement, shall not exceed the Plan Administrator Budget, in accordance with the Plan and the Plan Administrator Agreement.

### 9.4    Additional Terms and Conditions Applicable to the Plan Administrator.

The rights, duties and responsibilities of the Plan Administrator under the Plan are specified in the Plan Administrator Agreement.

## ARTICLE 10.

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### 10.1    Conditions Precedent to Confirmation.

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 10.3 of the Plan:

10.1.1    The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of Bankruptcy Code section 1125; *provided, however*, that the order approving the Disclosure Statement will be deemed to be a Final Order even if an appeal has been or may be taken, or a petition for certiorari has been or may be filed, and not been resolved so long as the Confirmation Order has not been reversed, stayed, modified or amended.

10.1.2    All provisions, terms and conditions hereof shall have been approved in the Confirmation Order.

**10.2    Conditions Precedent to the Effective Date**

.

It shall be a condition to the Effective Date and the obligation of the Equity Purchaser to purchase the New Ownership Interests of the Reorganized Debtor on the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 10.3 of the Plan:

10.2.1    The Confirmation Order shall have been entered, become a Final Order, and remain in full force and effect;

10.2.2    The Plan Documents, including the documents and instruments comprising the Plan Supplement and contemplated by the Settlement Agreement, shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein shall have been satisfied or waived pursuant to the terms of such documents or agreements;

10.2.3    All material governmental, regulatory, and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and consents required in connection with the Plan, if any, shall have been obtained and remain in full force and effect, and there shall exist no Claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

10.2.4    All documents contemplated by the Plan to be executed and delivered on or before the Effective Date shall have been executed and delivered;

10.2.5    All documents contemplated by the Plan to be executed and delivered on or before the Effective Date shall contain terms, conditions, representations, warranties, and covenants, each customary for the transactions described herein and be acceptable to the Debtor, the Equity Purchaser and the Committee;

10.2.6    On or before the Effective Date, the Equity Purchaser shall have funded the undrawn balance of the LP Unsecured DIP Facility to the Debtor to be paid, distributed, escrowed, or otherwise disbursed under this Plan; and

10.2.7    The Aggregate Administrative/Priority Claims shall not exceed the Aggregate Administrative/Priority Claim Cap.

**10.3    Satisfaction and Waiver of Conditions Precedent**

.

Except as otherwise provided in the Plan, any actions taken on the Effective Date shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  Any of the conditions set forth in Sections 10.2.1, 10.2.3, and 10.2.7 hereof may be waived in whole or part by the Debtor, with the consent of the Equity Purchaser, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  Any of the conditions set forth in Sections 10.2.2, 10.2.4, 10.2.5, and 10.2.6 hereof may be waived in whole or part by the Debtor, with the consent of the Equity Purchaser and the Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

**10.4    Effect of Non-Occurrence of Conditions to the Effective Date**

.

Unless the Debtor, the Equity Purchaser and the Committee agree otherwise, if the Effective Date does not occur on or before April 10, 2019, (i) the Confirmation Order shall be vacated, (ii) no Plan Distributions shall be made, (iii) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, (iv) the Debtor's obligations with respect to Claims and Interests shall remain unchanged, and (v) the Plan shall be null and void in all respects.  If the Confirmation Order is vacated pursuant to this Section 10.4, nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtor; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor or any other Person with respect to any matter set forth in the Plan.

## ARTICLE 11.

## EFFECT OF CONFIRMATION

### 11.1    Binding Effect

.

Except as otherwise provided in Bankruptcy Code section 1141(d)(3) and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

### 11.2    Discharge of Claims Against and Interests in the Debtor

.

Upon the Effective Date and in consideration of the Plan Distributions and other treatment herein, except as otherwise provided herein or in the Confirmation Order, each Person that is a holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by Bankruptcy Code section 1141, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests shall be forever precluded and enjoined, pursuant to Bankruptcy Code sections 105, 524, 1141, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor or the Reorganized Debtor.

### 11.3    Term of Pre-Confirmation Injunctions or Stays.

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 11.4    Injunction.

11.4.1    Except as otherwise provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtor are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Reorganized Debtor, the Estate or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or

45

successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or the Estate or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor, or the Estate or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided, however*, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

11.4.2    By accepting Plan Distributions, each holder of an Allowed Claim shall be deemed to have specifically consented to the Injunctions set forth in this Section.

**11.5    Releases.**

46

11.5.1   *Releases.*   **For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Releas~~ed~~ing Parties shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than their respective rights to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents executed and/or delivered in connection therewith) against ~~each other~~the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Reorganized Debtor, the Chapter 11 Case, or this Plan or the Disclosure Statement, that could have been asserted by or on behalf the Debtor or its Estate or the Reorganized Debtor or any other Releas~~ed~~ing Parties, whether directly, indirectly, derivatively or in any representative or any other capacity, other than claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud, willful misconduct or breach of fiduciary duty (if any). For the avoidance of doubt, notwithstanding anything to the contrary contained in this Section 11.5.1, no holder of a Claim, whether such claim is allowed either prior to or after the Effective Date of the Plan, shall be deemed to release its rights under Section 3.2 of the Plan, including any rights to receive Plan Distributions, rights or other treatment on account of such Allowed Claim.  For avoidance of doubt, notwithstanding anything to the contrary contained in this Section 11.5.1, no holder of a Fee Claim, whether such claim is allowed either prior to or after the Effective Date of the Plan, shall be deemed to release its Fee Claim under this Section 11.5.1 of the Plan.**

11.5.2   *Releases of Avoidance Actions.*   **For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Debtor in its individual capacity and as debtor in possession, and the Reorganized Debtor shall be deemed to forever release, waive and discharge all Avoidance Actions.**

11.5.3   **Notwithstanding anything to the contrary contained herein: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 11.5 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Tax Code or any state, city or municipal tax code, or (y) any criminal laws of the United States or any state, city or municipality; and (ii) the releases set forth in this Section 11.5 shall not release any (x) claims against any Person arising from or relating to such Person's gross negligence, fraud, willful misconduct or breach of fiduciary duty (if any), each as determined by a Final Order of the Bankruptcy Court, and (y) any Claims under the Settlement Agreement, the Equipment Lease and IP License Agreement, or any performance obligations or rights granted under this Plan.  Nothing herein shall abrogate the applicability of attorney disciplinary rules.**

47

11.5.4    As to the United States of America, its agencies, departments, or agents, nothing in the Plan or Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtor or Reorganized Debtor are entitled under the Bankruptcy Code, if any.  The discharge, release and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

11.5.5    Accordingly, notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning of Bankruptcy Code section 101(5); (2) any Claim of the United States arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of the United States against any of the Debtor; or (4) any liability of the Debtor or Reorganized Debtor under environmental law to any Governmental Unit (as defined by Bankruptcy Code section 101(27)) as the owner or operator of property that such entity owns or operates after the Confirmation Date.  Nor shall anything in the Plan or Confirmation Order:  (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by the Plan, Confirmation Order, or the Bankruptcy Code.

11.5.6    Moreover, nothing in the Plan or Confirmation Order shall release or exculpate any non-Debtor, including any Released Parties, from any liability to the United States, including but not limited to any liabilities arising under the Tax Code, the environmental laws, or the criminal laws against the Released Parties, nor shall anything in the Plan or Confirmation Order enjoin the United States from bringing any claim, suit, action or other proceeding against the Released Parties for any liability whatsoever; *provided, however*, that the foregoing sentence shall not limit the scope of discharge granted to the Debtor under Bankruptcy Code sections 524 and 1141.

11.5.7    Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtor and the Reorganized Debtor, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

**11.6    *Exculpation and Limitation of Liability.***

**To the extent permissible under applicable law, including, without limitation, Bankruptcy Code section 1125(e), none of the Exculpated Parties shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission occurring on or between the Petition Date and the Effective Date in connection with, or arising out of the Debtor's restructuring, including without limitation, the negotiation, implementation and execution of this Plan, the Chapter 11 Case, the Disclosure Statement,**

the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, the issuance of securities, or the administration of this Plan or the property to be distributed under this Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court; *provided, however*, notwithstanding anything to the contrary herein, the foregoing shall not release or exculpate: (i) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, and (ii) any failure to comply with the Confirmation Order.

### 11.7    *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Sections 11.5 and 11.6 of this Plan.

### 11.8    Retention of Causes of Action/Reservation of Rights

.

Subject to Section 11.5 of this Plan and except as expressly set forth herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Retained Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Reorganization Case had not been commenced may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

## ARTICLE 12.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain the maximum legally permissible jurisdiction over all matters arising out of, and related to the Chapter 11 Case or the Plan pursuant to, and for purposes of, Bankruptcy Code sections 105(a) and 1142, including, without limitation, jurisdiction to:

12.0.1    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Disputed Claim, including, without limitation, the

resolution of any request for payment of any Administrative Expense Claim, the resolution of any and all objections to the allowance or priority of any Claim and the resolution of any and all issues related to the release of Liens upon payment of a secured Claim;

12.0.2    grant or deny any applications for allowance of compensation or reimbursement of fees and expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

12.0.3    resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate any Claims arising therefrom; (b) any potential contractual obligation under any assumed Executory Contract or Unexpired Lease; and (c) any dispute regarding whether a contract or lease is or was an Executory Contract or Unexpired Lease, as applicable;

12.0.4    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

12.0.5    adjudicate, decide, or resolve any motions, adversary proceedings, Retained Causes of Action, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

12.0.6    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, the Confirmation Order, and all other orders, contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or Disclosure Statement;

12.0.7    resolve any cases, Claims, controversies, suits, disputes, or causes of action that may arise in connection with the occurrence of the Effective Date, confirmation, interpretation, implementation or enforcement of the Plan or the extent of any Person's obligations incurred in connection with or released under the Plan;

12.0.8    issue and enforce releases and injunctions provided by the Plan and the Confirmation Order, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the Effective Date or the consummation, implementation or enforcement of the Plan, except as otherwise provided in the Plan;

12.0.9    resolve any cases, controversies, suits, or disputes with respect to the releases, exculpations, and other provisions contained in article 11 of the Plan and enter such orders as may be necessary or appropriate to implement or enforce all such releases, exculpations, and other provisions;

12.0.10    recover all assets of the Debtor and property of the Debtor's Estates wherever located;

12.0.11    hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

12.0.12    consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

12.0.13    enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.0.14    resolve any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

12.0.15    adjudicate any and all disputes arising from or relating to Plan Distributions;

12.0.16    determine requests for the payment of Claims entitled to priority pursuant to Bankruptcy Code section 507, including requests by Professional Persons for payment of accrued professional compensation;

12.0.17    enforce all orders previously entered by the Bankruptcy Court;

12.0.18    hear any other matter not inconsistent with the Bankruptcy Code or related statutory provisions setting forth the jurisdiction of the Bankruptcy Court; and

12.0.19    enter a final decree closing the Chapter 11 Case.

## ARTICLE 13.

## MISCELLANEOUS PROVISIONS

### 13.1    Dissolution of Committee

.

The Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Committee (including each officer, director, employee, agent, consultant, or representative thereof) and each Professional Person retained by the Committee shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to the Debtor and the Chapter 11 Case; *provided, however,* that the foregoing shall not apply to any matters concerning any Fee Claims held or asserted by any Professional Persons retained by the Committee.

### 13.2    Modification of Plan

.

The Debtor reserves the right, with the consent of Lion Point, and in consultation with the Committee and the Equity Purchaser, in accordance with the Bankruptcy Code and the

51

Bankruptcy Rules, to amend, modify, or supplement the Plan before the entry of the Confirmation Order.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with Bankruptcy Code section 1127(b) to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  Subject to the foregoing, a holder of a Claim that had accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

### 13.3    Revocation or Withdrawal of Plan

.

The Debtor reserves the right, in consultation with the Committee and the Equity Purchaser, to revoke or withdraw the Plan in total prior to the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan in accordance with the preceding sentence prior to the Confirmation Date, or if confirmation or the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) excluding the Settlement Agreement, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.  For the avoidance of doubt, revocation or withdrawal of the Plan shall not impact the validity or effectiveness of the Settlement Agreement.

### 13.4    Allocation of Plan Distributions Between Principal and Interest

.

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 13.5    Severability

.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, at the request of the Debtor, upon the consent of the Equity Purchaser, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent

practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such order by the Bankruptcy Court, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.6    Governing Law

.

Except to the extent that the Bankruptcy Code or other U.S. federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 13.7    Inconsistency

.

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

### 13.8    Time

.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.9    Exhibits

.

All exhibits to the Plan are incorporated and are a part of the Plan as if set forth in full in the Plan.

### 13.10   Notices

.

To be effective, all notices, requests, and demands to or upon the Debtor shall be in writing (including by facsimile transmission) and, unless otherwise provided in the Plan, shall be

IMPAC 6144816V.1

deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**SUNIVA, INC.**
5765 Peachtree Industrial Blvd.
Norcross, Georgia 30092
Attn: David M. Baker, Chief Restructuring Officer

*With a copy to:*

**Counsel to the Debtor and Reorganized Debtor**

KILPATRICK TOWNSEND & STOCKTON
LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500                    POTTER ANDERSON & CORROON LLP
Facsimile: (404) 815-6555                     1313 North Market Street, Sixth Floor
Attn:   Todd C. Meyers, Esq.                  P.O. Box 951
        Colin M. Bernardino, Esq.            Wilmington, DE 19801
                                              Telephone: (302) 984-6000
                                              Facsimile: (302) 658-1192
                                              Attn: Jeremy W. Ryan, Esq.


**Lion Point and its Counsel**

Lion Point Capital, L.P.                      CLEARY GOTTLIEB STEEN &
250 West 55th Street                          HAMILTON LLP
33rd Floor                                    One Liberty Plaza
New York, NY 10009                            New York, NY 10006
Attn:   Irshad Karim, Esq.                    Attn:   Sean A. O'Neal, Esq.
        Cristiano Amoruso                             Kara Hailey, Esq.


*And, if prior to the Effective Date, to the following additional parties:*

**Counsel to the Official Committee of Unsecured Creditors:**

SEWARD & KISSEL LLP                           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
One Battery Park Plaza                         1201 North Market Street, Suite 1600
New York, NY 10004                            Wilmington, DE 19801
Telephone: (212) 575-1200                     Telephone: (302) 658-9200
Facsimile: (212) 901-2110                     Facsimile: (302) 658-3989
Attn:   John R. Ashmead, Esq.                 Attn:   Robert J. Dehney, Esq.
        Robert J. Gayda, Esq.                         Tamara K. Mann, Esq.

IMPAC 6144816V.1

Catherine V. LoTempio, Esq.

**13.11   Filing of Additional Documents**

.

On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Dated: ~~February 19,~~ April 5, 2019
Wilmington, DE

Respectfully submitted,


Suniva, Inc.


By: */s/ David M. Baker*_____

Chief Restructuring Officer
Suniva Inc.

IMPAC 6144816V.1